Samantha McDonnell (formerly known as Samantha Knight) appeals the Meigs County Court of Common Pleas' decision modifying her parental rights and responsibilities with respect to her daughter, Summer Brooke Knight. Specifically, McDonnell asserts that the trial court lacked jurisdiction because Summer's father, Vincent Knight, did not attach a child custody affidavit to his motion to reallocate parental rights and responsibilities. We disagree, because Knight filed a child custody affidavit in the original divorce proceeding, and thus complied with R.C. 3109.27. McDonnell also asserts that the trial court's judgment is not supported by competent, credible evidence and amounts to an abuse of the trial court's discretion. Because we find that the trial court's findings are supported by evidence in the record, and that the trial court applied its findings in accordance with the law, we disagree. Finally, McDonnell alleges that the trial court erred by permitting Knight to introduce false statements and hearsay into evidence via his affidavit and motion for emergency temporary custody. We disagree, because Knight never offered the affidavit and motion into evidence.
Accordingly, we affirm the judgment of the trial court.
 I.
McDonnell and Knight married in June 1993, and divorced in Meigs County in June 1995. In September 1993, one child, Summer, was born as issue of their marriage. Summer is Knight's only child. McDonnell entered the marriage with one child, a son born approximately one year before Summer's birth. McDonnell's son lived with his maternal grandmother, Mary Alexander, from the time of his birth through the time of the hearing in this matter. During the three and one-half years between her divorce from Knight and the hearing in this matter, McDonnell bore three more children. McDonnell's five children were fathered by three or four different men. Except for her eldest son, McDonnell's children have lived with her their entire lives.
As part of McDonnell and Knight's divorce, the court ordered that McDonnell and Knight share custody of Summer. In September 1996, Knight filed for contempt and reallocation of the parental rights and responsibilities when he learned that McDonnell took Summer and relocated to Texas. Knight dismissed the motion when, in January 1997, the parties agreed to modify the parenting plan and designate McDonnell as the residential parent. Under the modified plan Knight was entitled to visitation during school calendar periods of summer vacation, spring break, and winter break. Knight was to cover the cost of Summer's transportation to Ohio, and McDonnell was responsible for her transportation back to Texas. Additionally, the plan provided that McDonnell would notify Knight and allow visitation when McDonnell and Summer visited McDonnell's parents, the Alexanders, at their home in Chesapeake, Ohio.
In 1998, McDonnell and Knight agreed that Summer would visit Knight in August. Knight's mother, Susan Knight, agreed to travel to Texas to pick up Summer for the visit. Susan Knight purchased a round-trip airline ticket for herself, and a one-way ticket to Ohio for Summer. McDonnell admits that she knew which day Susan Knight was arriving to pick up Summer. However, McDonnell did not check her telephone messages that day, took Summer to a baseball game after work, and did not arrive home until ten o'clock at night. As a result, Susan Knight departed on her scheduled flight early the next morning without Summer.
A few months later, McDonnell arranged for Summer to visit the Alexanders in Chesapeake, Ohio. McDonnell did not notify Knight of the visit. Knight later learned that Summer was in Ohio, and filed a motion for emergency temporary custody, for contempt, and for modification of the parental rights and responsibilities. The trial court granted the motion for emergency temporary custody on November 6, 1998.
The trial court held a permanent custody hearing on December 18, 1998. The testimony revealed that McDonnell is twenty-three years old and has been married three times and divorced twice. McDonnell testified that she is in the process of obtaining a divorce because her third-husband is a prostitute. In November 1998, she and her four children moved from her third-husband's home into a two-bedroom apartment. McDonnell and her third-husband are battling for custody of her two youngest children.
McDonnell testified that she held a full-time job with a single employer, a pawn shop, for over a year. However, three weeks before the hearing, she quit and began working at a different pawn shop. Although she anticipated working only forty hours per week after Christmas, she worked approximately fifty hours per week during her first three weeks. McDonnell admitted that she danced in strip clubs in the past. Recently, in order to earn extra money for Summer's fifth birthday, she worked as a fully-clothed waitress in a topless club. At the time of the hearing, McDonnell's current boyfriend, whom she had been dating for approximately one month, was visiting McDonnell's apartment daily and occasionally spending the night. McDonnell's only family in Texas, an aunt upon whom she relied for babysitting, had moved to Ohio, and McDonnell's friend was watching the children while McDonnell worked.
The testimony revealed that McDonnell was Knight's first and only wife. Knight, at thirty-one years of age, owns a three-bedroom home and the surrounding property. At the time of the hearing, Knight had been with his current employer for six years. Summer's paternal grandmother and aunt testified that they are available to babysit Summer while Knight is a work. In addition, Summer's maternal grandmother, Mary Alexander, testified that she lives with her husband and Summer's half-brother in Chesapeake, a one to two hour drive from Knight's home, and that they would like to see Summer more often.
Based upon the testimony presented, the trial court announced in its second conclusion of law that there had been a change of circumstances in McDonnell's life, that Summer's best interest would be served by permitting Knight to become her residential parent, and that benefits of changing Summer's environment outweighed the potential harm resulting from changing her environment. Therefore, the trial court designated Knight as Summer's residential parent. The court granted McDonnell visitation rights during Summer's school breaks, and granted the Alexanders visitation rights for one weekend per month.
McDonnell timely appealed the trial court's decision. She asserts the following assignments of error:
 I. The Honorable Judge Dan Favreau, sitting by assignment in this case, was without jurisdiction to issue any orders in this matter with respect to change of custody because no uniform child custody affidavit, required by [R.C.] 3109.27 was ever filed by the appellee in these proceedings.
 II. The court's own entry, when it finally signed a long-delayed entry of findings of fact and conclusions of law, is overwhelmingly supportive of the fact, that clearly, Samantha McDonnell, is the proper person to have the custody of the child, Summer Knight.
 III. There was no change of circumstances of the appellant/mother, and the court erred, as a matter of law, when it found that there were changes of circumstance sufficient to justify a change of custody, pursuant to section 3109.04 of the Ohio Revised Code.
 IV. The court erred as a matter of law in conclusions of law number 2.
 II.
McDonnell asserts in her first assignment of error that the trial court lacked subject matter jurisdiction in this case because Knight did not file an R.C. 3109.27 affidavit with his motion for change of custody. R.C. 3109.27(A) provides, in pertinent part, as follows:
 Each party in a parenting proceeding, in the party's first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the name and present address of each person with whom the child has lived during that period.
"Parenting proceeding," as used in R.C. 3109.27, is defined as any proceeding "in which a parenting determination is one of several issues, such as an action for divorce * * *." R.C.3109.22(C).
In this case, the parties' 1994-1995 divorce action included a parenting determination, and therefore, constituted a "parenting proceeding" as defined under R.C. 3109.27. Christy v. Christy
(June 12, 1997), Highland App. No. 96CA902, unreported. Thus, Knight's motion for change of custody was not Knight's "first pleading" in the "parenting proceeding." See Matter of Porter
(Aug. 19, 1996), Marion App. No. 9-95-43, unreported. Indeed, Knight premised his motion on McDonnell's failure to comply with the court's previous orders regarding Knight's visitation with Summer. Knight supplied the jurisdictional information required by R.C. 3109.27 to the trial court by affidavits filed on January 14, 1994, and September 9, 1996. Knight was not required, therefore, to accompany his motion for a change of custody with a subsequent jurisdictional affidavit. See Christy, supra, citingAdkins v. Adkins (May 15, 1991), Pickaway App. No. 89CA26, unreported.
Additionally, we note that McDonnell did not object in the trial court to the court's exercise of jurisdiction despite Knight's failure to file an affidavit with his motion. Where the parties do not raise the issue of a missing R.C. 3109.27
affidavit in the trial court, the court does not err by exercising its jurisdiction. Adkins, supra. Thus, even if Knight had been required to file an affidavit, we would nevertheless conclude that McDonnell waived her right to contest the trial court's jurisdiction because she failed to raise the issue before the trial court.
Accordingly, we overrule McDonnell's first assignment of error.
 III.
McDonnell's second, third, and fourth assignments of error each broadly allege that the evidence did not support the trial court's determination that a change of circumstances occurred, that designating Knight as Summer's residential parent is in her best interest, and that the benefit resulting from changing Summer's environment outweighed any potential harm.
R.C. 3109.04 sets forth the requirements for modifying an allocation of parental rights. See Davis v. Flickinger (1997),77 Ohio St.3d 415. R.C. 3109.04(E)(1)(a) provides:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
* * *
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Thus, the trial court may not modify a prior decree designating the residential parent unless it finds that (1) based upon facts occurring after the original decree or unknown to the court at the time of the original decree, a change has occurred in the circumstances of the child or her residential parent; (2) a modification is in the best interest of the child; and (3) one of the conditions listed in R.C. 3109.04(E)(2)(a) exists. Clyborn v.Clyborn (1994), 93 Ohio App.3d 192, 195; Holm v. Smilowitz
(1992), 83 Ohio App.3d 757, 773. In assessing the child's best interest, the trial court should look to not only the home environment provided by each parent, but also to the extent to which each parent will permit and encourage the involvement of both parents in the child's life. See Davis at 419. A residential parent's interference with visitation by the other parent materially affects the best interest of the child. R.C.3109.04(F)(1); Davis at 419; Holm at 773.
A reviewing court may not reverse the trial court's determination of whether a change in circumstances has occurred absent an abuse of discretion. Davis at paragraph one of the syllabus. Likewise, the reviewing court must afford great deference to the trial courts discretionary assessment of where the child's best interests lie, and whether the advantages of changing the child's environment outweigh the disadvantages. SeeDavis at 420; Holm at 774, 777.
The abuse of discretion standard, as applied in custody cases, requires the reviewing court to affirm the trial court's custody determination as long as the "award of custody is supported by a substantial amount of credible and competent evidence." Davis at 418, citing C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, and Bechtol v. Bechtol (1990), 49 Ohio St.3d 21. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1 (1991), 57 Ohio St.3d 135;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. When applying the abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. In re Jane Doe 1; Berk v. Matthews (1990), 53 Ohio St.3d 161. Rather, the reviewing court must afford the trial court wide latitude in considering all the evidence supporting a change.Davis at paragraph two of the syllabus. We afford this latitude because the trial court observes the witnesses' demeanor, gestures, tone and voice inflections, characteristics which do not translate well onto the written page. Thus, the trial court is best able to assess the credibility of the evidence and testimony. Davis at 418, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80-81.
 A.
In this case, McDonnell asserts in her second assignment of error that substantial evidence in the record clearly supports her position that no change of circumstances occurred and that Summer's best interest will be served by allowing Summer to remain in McDonnell's custody. McDonnell lists specific facts in the record which she contends weigh in favor of a finding that Summer's best interest will be served by Summer returning to Texas with McDonnell, and asks us to review these facts. However, the inquiry McDonnell asks us to make is not relevant to the resolution of this appeal.
Under the abuse of discretion standard of review, our task is to review the record to determine if it contains evidence supporting the trial court's decision, not to assess whether it also contains evidence supporting the contrary position. SeeDavis at paragraph two of the syllabus. Indeed, in almost every case, each party produces evidence supporting his or her position. However, the mere presence of some evidence supporting a party's position does not entitle him or her to a favorable judgment. Rather, the trial court weighs each party's evidence. Our role under the abuse of discretion standard of review does not permit us to weigh the evidence. See Davis at 418, citingSeasons Coal Co. at 80-81. We decline to reach beyond the scope of our review by considering whether evidence in the record supports McDonnell's claim for custody.
Accordingly, we overrule McDonnell's second assignment of error.
 B.
McDonnell asserts in her third and fourth assignments of error that the record does not contain evidence supporting the trial court's determination that a change of circumstances occurred, that Summer's best interest will be served by designating Knight as her residential parent, and that the benefits of changing Summer's environment outweighs the potential harm. Knight asserts that the record contains a substantial amount of competent, credible evidence supporting the trial court's decision.
The record reveals that McDonnell, at age twenty-three, is in the midst of her third divorce and a custody battle for the youngest two of her five children. McDonnell currently has no family in Texas and, consequently, McDonnell relies exclusively on non-relatives to babysit. Six weeks prior to the hearing, McDonnell moved into a two-bedroom apartment with the four children then in her custody. At the time of the hearing, McDonnell had worked in her current job for only three weeks. McDonnell testified that her boyfriend, whom she had known for approximately one month, and his two children visit her apartment daily and occasionally spend the night. McDonnell knowingly interfered with Knight's visitation rights by taking Summer to a baseball game, instead of being home to transfer Summer to the Knight family, on the day that Susan Knight flew to Texas to pick up Summer. McDonnell further failed to comply with the shared parenting plan by sending Summer to Ohio to visit her maternal grandparents without informing Knight. Each of the above events represents a change in circumstances since the prior decree allocating parental rights and responsibilities. We find that these facts constitute a substantial amount of competent, credible evidence supporting the trial court's determination that a change in circumstances occurred.
Additionally, the record contains competent, credible evidence supporting the trial court's determination that altering the parent's rights and responsibilities is in Summer's best interest. R.C. 3109.04(F)(1) lists factors for determining a child's best interest. The court must consider whether a parent has established a residence outside of Ohio. R.C.3109.04(F)(1)(j). The child's continuing opportunity to interact with both parents is relevant to the best interest determination. R.C. 3109.04(F)(1)(f) (i). Finally, the child's interrelationship with his parents and other family members, as well as the mental health of the parents and family members, are relevant considerations. R.C. 3109.04(F)(1)(c)-(e).
In this case, McDonnell moved to Texas when Summer was two years old. McDonnell has failed to cooperate in Knight's efforts to exercise his visitation rights, thus supporting the conclusion that Summer's opportunity to see both of her parents is greater when Knight is her residential parent. In addition, based upon the facts supporting the change in circumstances determination, the trial court found that McDonnell's life lacks stability, and father figures drift in and out of Summer's life as a result. In contrast, the trial court found that Knight owns a three-bedroom home and the surrounding property, has worked the same job for six years, has married only once (to McDonnell), and has a stable social and personal life. A family member, Susan Knight, is willing and able to baby-sit Summer while Knight is at work. Moreover, by remaining in Southeastern Ohio, Summer also will have the benefit of frequently interacting with and developing relationships with both her maternal and paternal grandparents, her half-brother, and her aunt.
Finally, we find that the record contains substantial competent, credible evidence to support the trial court's conclusion that, pursuant to R.C. 3109.04(E)(1)(a)(iii), the harm likely to result from changing Summer's home environment does not outweigh the advantages. At the time of the hearing, Summer had spent each day with Knight and night with her paternal grandparents for a period of one month. The testimony reflected that Summer was happy and comfortable in the routine that the Knights established for her. In contrast, the home environment McDonnell was providing for Summer changed drastically in the month before the hearing: she lost her step-father to divorce, she moved from her home into an apartment with only two bedrooms, and she began sharing her mother's daily free time with her new boyfriend and his children. Thus, Summer's environment arguably changed as much, if not more, in McDonnell's care than it did in Knight's care. Moreover, history suggests that Knight's environment is likely to remain stable, while McDonnell's is not. Thus, the trial court may have concluded that a single environment change is preferable to many environment changes.
We find that the record in this case reveals that both McDonnell and Knight care deeply for Summer. However, the trial court found that a change in circumstances necessitated modifying the shared parenting decree to serve Summer's best interest, and the record contains a substantial amount of competent, credible evidence supporting that finding. We further find that the trial court properly considered the factors in R.C. 3109.04(F)(1) to determine Summer's best interest. Finally, in compliance with R.C. 3109.04(E)(1)(a)(iii), the trial judge found that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment for Summer.
Therefore, the trial court did not abuse its discretion in modifying the parental rights and responsibilities with respect to Summer.
Accordingly, we overrule McDonnell's third and fourth assignments of error.
 IV.
The argument section following McDonnell's third assignment of error is largely unrelated to the assignment of error itself. In the interest of justice, we briefly address the merits of the argument recited under McDonnell's third assignment of error.
McDonnell asserts that Knight's affidavit and motion for temporary and emergency custody contain false statements and hearsay, and argues that the trial court should not have permitted Knight to use those statements to obtain custody of Summer. However, while McDonnell seems to assert that the trial court abused its discretion by admitting the affidavit and motion into evidence, the record reveals that Knight never even offered the affidavit and motion into evidence. Therefore, we need not determine whether they contained inadmissible hearsay. Moreover, during the hearing, McDonnell cross-examined Knight extensively regarding the statements he made in the affidavit and motion. Thus, to the extent that the content of the affidavit and motion was admitted into evidence via testimony, McDonnell invited the content into evidence. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State exrel. Bitter v. Missig (1995), 72 Ohio St.3d 249, 254, citingState ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359. Finally, we note that the trial court, as finder of fact, was free to assess Knight's credibility and believe or disbelieve the statements which McDonnell contends are false.
Accordingly, we overrule the argument following McDonnell's third assignment of error.
 V.
In conclusion, we overrule McDonnell's first assignment of error because the trial court properly exercised its jurisdiction because Knight filed a child custody affidavit in the divorce proceeding. Additionally, we overrule McDonnell's second, third, and fourth assignments of error because the record contains a substantial amount of competent, credible evidence supporting the trial court's judgment, and because the trial court did not abuse its discretion in entering judgment for Knight. Finally, we overrule McDonnell's argument that the trial court erred by admitting Knight's affidavit and motion into evidence, because Knight never offered them as evidence. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.