DECISION AND JUDGMENT ENTRY
Judith Eddy, n.k.a. Judith Adamson (Ms. Adamson), appeals the Washington County Common Pleas Court's property and debt distribution after it granted her divorce from Gene Eddy. She assigns the following errors:
 FIRST ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN FINDING THAT HALF OF THE EQUITY IN THE LARGER TRACT (80 ACRE PARCEL) WAS THE SEPARATE PROPERTY OF THE APPELLEE BECAUSE DEFENDANT-APPELLEE FAILED TO MEET HIS BURDEN OF PROOF, BY A PREPONDERANCE OF THE EVIDENCE, TO TRACE THE ASSET TO SEPARATE PROPERTY.
 SECOND ASSIGNMENT OF ERROR — THE TRIAL COURT'S FINDING THAT HALF OF THE EQUITY IN THE LARGER TRACT (80 ACRE PARCEL) WAS THE SEPARATE PROPERTY OF THE APPELLEE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THIRD ASSIGNMENT OF ERROR — IN LIGHT OF THE TRIAL COURT'S AWARD OF A SEVENTY-FIVE PERCENT INTEREST IN THE LARGER TRACT (80 ACRE PARCEL) TO THE APPELLEE, THE TRIAL COURT ERRED WHEN IT ORDERED THE APPELLANT TO PAY FIFTY PERCENT OF THE FIRST MORTGAGE ON THE LARGER TRACT (80 ACRE PARCEL) UNTIL THE PARCEL IS SOLD.
 FOURTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN FINDING THAT FIFTY-PERCENT OF THE LARGER TRACT (80 ACRE PARCEL) WAS THE SEPARATE PROPERTY OF THE APPELLEE BECAUSE APPELLEE FAILED TO PRESENT EVIDENCE TO THE COURT REGARDING THE VALUE OF HIS SEPARATE PROPERTY AT THE TIME OF THE MARRIAGE.
 FIFTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT FAILED TO FIND A VALUE TO THE LARGER TRACT (80 ACRE PARCEL), AND INSTEAD SIMPLY ORDERED THE PROPERTY SOLD.
 SIXTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT ORDERED THE APPELLANT TO PAY A DISPROPORTIONATE AND INEQUITABLE PORTION OF THE PARTIES EQUILINE, WHICH IS SECURED BY THE LARGER TRACT (80 ACRE PARCEL), IN LIGHT OF APPELLEE'S TESTIMONY AND THE COURT'S DIVISION OF THE EQUITY INTEREST IN THE LARGER TRACT (80 ACRE PARCEL).
 SEVENTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN FINDING THAT THE DEFACTO [SIC] TERMINATION OF THE MARRIAGE WAS ON DECEMBER 3, 1999, THE DATE OF THE PARTIES' SEPARATION, YET FAILING TO AWARD APPELLANT ANY CREDIT FOR HER PAYMENT OF THE FIRST MORTGAGE ON THE LARGER TRACT (80 ACRE PARCEL) AFTER DECEMBER 3, 1999.
 EIGHTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED IN FINDING THAT THE DEFACTO [SIC] TERMINATION OF THE MARRIAGE WAS ON DECEMBER 3, 1999, THE DATE OF THE PARTIES' SEPARATION, WHEN THE COURT HAD NO EVIDENCE TO SUPPORT SUCH A FINDING, AND WHEN THE COURT MADE NO DETERMINATION THAT TERMINATION OF THE MARRIAGE ON THE DATE OF FINAL HEARING WOULD BE INEQUITABLE.
 NINTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT FOUND THAT THE MR. EDDYRATOR WAS THE PROPERTY OF THE ESTATE OF APPELLEE'S DECEASED FATHER, AND WHEN THE COURT FOUND THAT THE MR. EDDYRATOR WAS WORTH $1,000.00, WHEN THE COURT HAD NO EVIDENCE IN SUPPORT OF SUCH FINDINGS.
 TENTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT FAILED TO INCLUDE THE ROYALTY INCOME FROM THE OIL LEASES IN ITS DIVISION OF MARITAL ASSETS.
 ELEVENTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT SUBTRACTED THE VALUE OF CERTAIN NON-MARITAL PERSONAL PROPERTY FROM A NUMBER REPRESENTING THE APPRAISED VALUE OF MARITAL PERSONAL PROPERTY ONLY.
 TWELFTH ASSIGNMENT OF ERROR — THE TRIAL COURT ERRED WHEN IT DIVIDED THE ASSETS AND LIABILITIES OF THE PARTIES SUCH THAT DIVISION WAS NEITHER EQUAL NOR EQUITABLE.
Ms. Adamson's sixth, seventh, ninth and eleventh assignments of error have merit and are sustained.
Mr. Eddy and Ms. Adamson were married in 1988 and have no children together. Mr. Eddy moved out of the marital home on December 3, 1999, and in August 2000, Ms. Adamson filed for divorce. Later, Mr. Eddy filed his answer and a counterclaim for divorce. Although the final hearing occurred in May 2001, the trial court set December 3, 1999, as the de facto termination of marriage date.
The Eddy's marital home is a log cabin, located on an 80 acre parcel of land. This parcel also contains four oil and gas wells. The trial court found that one-half of the parcel was Mr. Eddy's separate property and that the remaining one-half interest was marital property. Therefore, the trial court awarded Mr. Eddy a three-fourths interest and Ms. Adamson a one-fourth interest in this parcel.
Two mortgages encumber this 80 acre parcel. The Eddy's obtained the first mortgage in 1991 in order to purchase the one- half marital interest in the property. The second mortgage, i.e., Equiline, was obtained in order to help Mr. Eddy start his bail bonding business. The trial court split the outstanding debt for the first mortgage and the Equiline evenly. The trial court also ordered the 80 acre parcel sold with the proceeds going to the outstanding mortgages and then split according to the party's interest in the land, i.e., three-fourths to Mr. Eddy and one-fourth to Ms. Adamson.
The Eddy's also purchased a 58 acre parcel of land during their marriage, which the trial court properly classified as marital property. There is no mortgage encumbering this property. The trial court ordered this parcel sold and the proceeds split evenly between the parties.
The trial court also found that a generator, now in Ms. Adamson's possession but stored during the marriage in Mr. Eddy's deceased father's garage, belonged to Mr. Eddy's father's estate. The trial court valued the generator at $1000. Finally, the trial court subtracted the value of certain real estate fixtures from Keelan McLeish's appraisal of marital farm equipment and tools. This appeal followed.
All of Ms. Adamson's assignments of error, except seven and eight, are interrelated. These assignments of error involve the trial court's findings regarding the distribution of property and the characterization of certain property as either separate or belonging to someone else. Therefore, we will consider them together under the appropriate standard of review. But first we will address Ms. Adamson's eighth and seventh assignments of error.
Before characterizing property as separate or marital and then distributing it accordingly, the court must determine the termination date of the marriage. R.C. 3105.171(G). In her eighth assignment of error, Ms. Adamson argues that the trial court abused its discretion in determining that the date of separation represented the de facto termination of marriage date. Instead, Ms. Adamson argues that the trial court should have used the date of the final hearing. Ms. Adamson contends that the trial court abused its discretion because neither party requested the de facto termination date, neither party presented evidence regarding the de facto termination date and the trial court did not make a finding that it would be inequitable to use the final hearing date as the termination of marriage date. We reject Ms. Adamson's arguments.
Trial courts possess broad discretion in choosing the appropriate termination of marriage date for the purposes of valuing property. Berishv. Berish (1982), 69 Ohio St.2d 318, 319, 432 N.E.2d 183. Thus, the termination of marriage date will not be disturbed absent an abuse of discretion. Id. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Masters v. Masters, 69 Ohio St.3d 83, 85,1994-Ohio-483, 630 N.E.2d 665. When applying this standard, we are not free to merely substitute our judgment for that of the trial court. Berkv. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. However, this discretion is not unlimited. Berish, 69 Ohio St.2d at 321, fn. 1, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355, 421 N.E.2d 1293. This standard of review also governs the third, fifth, sixth, seventh, ninth, tenth, eleventh and twelfth assignments of error.
The duration of the marriage is critical in distinguishing marital, separate and post-separation assets and liabilities, and determining appropriate dates for valuation. See Berish, supra. Trial courts often terminate marriages as of the date of the final hearing. R.C.3105.171(A)(2)[1]. Nevertheless, the Ohio Supreme Court has stated that equity may occasionally require the trial court to choose a de facto termination of marriage date. Berish, 69 Ohio St.2d at 320. R.C.3105.171(G) states that the trial court "shall specify the dates it used in determining the meaning of `during the marriage.'" The trial court is not statutorily required, by either R.C. 3105.171(A)(2)(b) or R.C.3105.171(G), to make a factual finding to support its determination. Thus, absent a request for findings of fact and conclusions of law, we will affirm a court's use of a de facto termination date, even in the absence of an expression of its rationale, if there is any evidence in the record to support it.
Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts. See Gullia v. Gullia (1994), 93 Ohio App.3d 653,666, 639 N.E.2d 822. Courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home. Day v. Day (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201. Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances. Id.
Here, the trial court chose December 3, 1999, as the de facto termination of marriage date. When the trial court first became aware of this date, it suggested that December 3, 1999, be used as the de facto termination of marriage date but the parties did not agree. Nevertheless, in its entry, the trial court chose December 3, 1999, as the de facto termination of marriage date. The record supports the use of this date because Mr. Eddy moved out of the marital home on that date and the parties did not attempt a reconciliation after that time. Ms. Adamson withdrew the remaining funds from the Equiline and seized the contents of Mr. Eddy's safety deposit box around that time. Moreover, Ms. Adamson agreed that the Equiline debt should be divided between the parties according to who made the charges. By doing so she implicitly acknowledged the demise of the relationship and the separate nature of this debt. She also sought a credit for the mortgage payments she made after that date. Therefore, the trial court did not abuse its discretion in choosing December 3, 1999, as the de facto termination of marriage date because the totality of the circumstances supports the use of this date. Ms. Adamson's eighth assignment of error is overruled.
Ms. Adamson's seventh assignment of error argues that if the trial court used a de facto termination of marriage date, it erred in not awarding her a credit for mortgage payments made after that date. In the absence of any explanation by the court of why it did not apply the de facto date in this context, we agree. Contrary to appellees assertion, she did not waive this issue and specifically requested that she receive a credit for the mortgage payments she made after Mr. Eddy left. Ms. Adamson's seventh assignment of error is sustained.
After determining the term of the marriage and before the trial court reaches the stage of distributing property, it must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). This determination is a factual inquiry and is reviewed under a manifest weight of the evidence standard. Barkley v. Barkley
(1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. We will not reverse a trial court's judgment so long as it is supported by some competent, credible evidence going to all of the essential elements of the case.Sec. Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20,492 N.E.2d 438. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. We are guided by the presumption that the trial court's factual findings are correct since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. In re Jane Doe I (1991), 57 Ohio St.3d 135, 138,566 N.E.2d 1181. This standard of review governs the first, second and fourth assignments of error.
Trial courts are required to divide marital and separate property equitably between the spouses. R.C. 3105.171(B). This requires, in most cases, that marital property be divided equally. R.C. 3105.171(C)(1). However, if an equal division would produce an inequitable result, the trial court is only required to divide the property equitably. Id. Separate property is to be distributed to the spouse who brought that property into the marriage, except as further indicated in the statute. See R.C. 3105.171(D). Since the trial court possesses a great deal of discretion in attaining an equitable distribution, the court's division of property will not be reversed absent an abuse of discretion. SeeHolcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597.
Marital property includes all real property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Therefore, property acquired during the marriage is presumed to be marital in nature unless it is shown to be separate. Separate property includes any property acquired by one spouse prior to the date of the marriage. R.C.3105.171(A)(6)(a)(ii). The commingling of separate and marital property does not destroy the character of the separate property unless its identity as separate property is not traceable. R.C. 3105.171(A)(6)(b). See, also, Barkley, 119 Ohio App.3d at 160. Therefore, it is presumed that a spouse's premarital property remains separate property so long as it is traceable, regardless of whether it has been commingled with other property. Thus, the key question is whether an asset may be traced to a separate property source. Knight v. Knight (April 12, 2000), Washington App. No. 99CA27, citing Peck v. Peck (1994), 96 Ohio App.3d 731, 734,645 N.E.2d 1300. The party seeking to establish that an asset or a portion of it is their own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property source. Id.
In her first, second, and fourth assignments of error Ms. Adamson argues that the trial court's determination that Mr. Eddy has a separate one-half interest in the 80 acre parcel is against the manifest weight of the evidence. Ms. Adamson asserts that the trial court erred because Mr. Eddy did not carry his burden of proof and that he did not sufficiently trace his interest as separate property. We find no merit in these arguments.
Ms. Adamson testified that it was her belief that she and Mr. Eddy purchased the entire 80 acre parcel making it marital property. In order to support her belief, Ms. Adamson introduced the loan settlement papers for the first mortgage, which showed a $44,000 mortgage loan. Ms. Adamson argues that the loan settlement papers show that the purchase and mortgage was for the entire 80 acre parcel, not merely a one-half interest. Ms. Adamson also introduced Michael Iaderosa's 1991 appraisal, which was completed as part of the process in obtaining the first mortgage. Ms. Adamson contends that this appraisal valued the entire 80 acre parcel at $56,000. Ms. Adamson reasons that if she and Mr. Eddy purchased only a one-half marital interest, then the loan would have been for no more than $28,000. Therefore, Ms. Adamson argues that Mr. Eddy did not have a premarital interest in the 80 acres.
Mr. Eddy testified that he had a one-half premarital interest in the 80 acres, which was separate property. Mr. Eddy bolstered this testimony with the deeds, which evidenced the various conveyances. In addition, Mr. Eddy testified and Ms. Adamson acknowledged, that before they obtained the first mortgage, Mr. Eddy's father only charged them $100 rent to live in the log cabin located on the 80 acre parcel. Mr. Eddy testified that it was his belief that the $100 did not represent the fair market value for rent and that the reduced rent represented a "family discount." Ms. Adamson also acknowledged that she had paid considerably more than $100 rent for an apartment prior to moving into the log cabin.
R.C. 3105.171(H) provides that "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Thus, Mr. Eddy had to present more than the deeds to establish that his one-half premarital interest was separate property. Here, Mr. Eddy presented the trial court with more than the deeds to meet this burden. First, Mr. Eddy testified that he had a one-half premarital interest in the 80 acres. See West v. West, Wayne App. No. 01CA0045, 2002-Ohio-1118, citing Wolfangel v. Wolfangel (May 24, 1995), Summit App. No. 16868 (stating that the proponent's testimony alone is sufficient to trace property to separate property). Then, he introduced evidence to suggest that the $100 rent can reasonably be viewed as a discount to a co-owner of the property. Since credibility is generally a determination for the trial court, it was within the trial court's discretion to give more weight to Mr. Eddy's testimony. See In re Jane Doe I,57 Ohio St.3d at 138. Therefore, even though the $44,000 mortgage for a one-half interest is puzzling in light of the $56,000 appraisal, there is some, competent and credible evidence supporting the trial court's finding that Mr. Eddy's one-half premarital interest in the 80 acre parcel is separate property.
Ms. Adamson also argues that Mr. Eddy was required to establish a value for his premarital interest before the trial court could accurately trace the interest to separate property. Assigning value is one method to trace separate property. But it is not the only method. See West v. West, Wayne App. No. 01CA0045, citing Wolfangel v. Wolfangel (May 24, 1995), Summit App. No. 16868, (stating that the proponent's testimony alone is sufficient to trace property to separate property). In addition, R.C.3105.171(A)(6)(b) only requires that separate property be traceable, it does not require the proponent to establish a premarital value for the separate property. Real property is routinely divided into fractional interests without assigning value. Since we are only concerned with the fractional interest in the property and not the funds, i.e., down payment, etc., attributed to each party, Mr. Eddy was not required to establish a value for his premarital interest. Mr. Eddy's one-half premarital interest was properly traced to separate property since the trial court could trace his interest based on the deeds and his testimony.
Therefore, Mr. Eddy has introduced sufficient evidence to trace his one-half premarital interest to a separate source, i.e., the earlier conveyances by deed. Mr. Eddy's testimony, the deeds and the reduced rent support the trial court's finding that Mr. Eddy owned a one-half interest in the 80 acre parcel as his separate property. Thus, the trial court's finding is supported by some, competent and credible evidence and is not against the manifest weight of the evidence. The trial court did not err in finding that Mr. Eddy has a three-fourths interest and Ms. Adamson has a one-fourth interest in the 80 acre parcel. Ms. Adamson's first, second and fourth assignments of error are overruled.
In her third assignment of error, Ms. Adamson argues that since the trial court found that Mr. Eddy had a three-fourths interest in the 80 acre parcel, it should also have found that he was responsible for three-fourths of the first mortgage. Instead, the trial court found that Mr. Eddy was responsible for only fifty percent of the first mortgage. We find no merit in Ms. Adamson's argument.
Mr. Eddy's separate interest in the 80 acre parcel is distinct from the marital property. The trial court found that only an undivided one-half interest in the 80 acre parcel is marital property. The loan that formed the basis for the first mortgage did not encumber the undivided one-half interest that Mr. Eddy owned as his separate property. Rather the loan was used to acquire the marital interest in the property; accordingly, it was reasonable for the court to apportion that debt solely towards the one-half interest the parties acquired during their marriage. The trial court did not abuse its discretion in dividing that debt equally between the parties. Ms. Adamson's third assignment of error is overruled.
In her fifth assignment of error, Ms. Adamson argues that the trial court abused its discretion by not assigning a value for the 80 acre parcel. Ms. Adamson reasons that the trial court was required to assign a value before ordering that the property be sold. We find no merit in this argument.
R.C. 3105.171(J)(2) states that the trial court may "issue any orders under this section that it determines equitable, including, * * * the following types of orders: (2) An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." The statute does not require that the trial court assign a value for sale.
Generally, a trial court must make findings of value when dividing property so that we can conduct a meaningful review regarding whether the division is equitable. Kell v. Kell (Dec. 14, 1993), Ross App. No. 92CA1931, citing Eisler v. Eisler (1985), 24 Ohio App.3d 151, 152,493 N.E.2d 975. Here, the trial court ordered the 80 acre parcel sold at a price to be determined by the parties. The trial court also provided that if the parties could not agree on a sale price then the price should be set at a price not lower than $87,000, the appraisal value given by Harold Cranston. Further, the trial court ordered that the proceeds of the sale should be split evenly. Since the trial court ordered that the proceeds should be split evenly and set a minimum value, the property division would be equitable to the parties regardless of the chosen sale price. See Winston v. Winston (Nov. 16, 2000), Stark App. No. 1999CA00313. Therefore, there is no abuse of discretion when a trial court allows the market to determine the appropriate sale price. Ms. Adamson's fifth assignment of error is overruled.
In her sixth assignment of error, Ms. Adamson argues that the trial court abused its discretion by inequitably apportioning the debt on the home equity line, e.g. the "Equiline". Ms. Adamson reasons that both parties testified that each party should be responsible for their own portion of the Equiline and all of the evidence supports that testimony. Yet, the trial court ordered that the Equiline should be split evenly.
Both parties testified that Mr. Eddy obtained the $35,000 Equiline. Even though Ms. Adamson signed the loan papers, she testified that she had no knowledge of the reason for obtaining the Equiline. Mr. Eddy testified that he obtained the Equiline in order to start his bail bonding business and used $26,497.13 of the Equiline for that purpose. Ms. Adamson admitted withdrawing the balance of the Equiline, $8,502.87, after she learned that Mr. Eddy had withdrawn the bulk of it. Further, both parties testified that the Equiline should be considered separate debt, with each party responsible for their respective amounts. Nevertheless, the trial court divided the Equiline debt evenly.
The trial court's decision is an abuse of discretion because all of the evidence supports the conclusion that the Equiline is separate debt and that each party should be responsible for their respective shares. It is unreasonable to order Ms. Adamson to pay part of a debt that Mr. Eddy concedes he used for his sole benefit. The following exchange supports our decision:
 (By Mr. Eddy's Counsel) Q: Mr. Eddy, is there also an equity line on the property?
A: Yes, sir. There is.
 Q: Did you take funds out of the equity line to go ahead and use in your bonding business?
A: Yes, and personally.
 Q: Are you willing to agree that the equity line should be paid back disproportionately, something other than 50/50?
 A: Yes, sir. I would — it's approximately 27,000 — whatever — she took the balance out and I am responsible for the first 26,000, whatever it is.
Q: And so 26,497.13 you believe you should pay back?
A: Yes, sir.
Q: And 8,502.87 you believe she should pay back?
A: Yes, sir.
The trial court is not required to distribute the debt equally; instead, it is required to distribute the debt equitably. R.C. 3105.171(B). We see no other way to distribute the debt equitably other than to order that each party be responsible for their respective shares. Ms. Adamson's sixth assignment of error is sustained.
In her ninth assignment of error, Ms. Adamson argues that the trial court abused its discretion in finding that the generator was not marital property and valuing the generator at $1000. We also find this argument compelling.
The trial court ordered Ms. Adamson to pay Mr. Eddy's father's estate $1000 for the generator. Ms. Adamson argues there is no evidence to show that the generator was anything but marital property and that the uncontroverted evidence shows that the generator was worth $800. Mr. Eddy's counsel questioned Ms. Adamson about the generator and the following exchange took place:
 Q: And there were two generators purchased; is that correct?
A: That's correct.
 Q: And they were in Mr. Eddy's barn, were they not, Kenneth Eddy's garage?
A: At one point.
 Q: And you removed or had removed or know how it was removed, one of those generators was removed there from, correct?
A: Yes.
Q: And it was moved to Marietta Country Club?
A: Yes.
Q: And kept in storage at Marietta Country Club?
A: Yes.
Q: Is it still at Marietta Country Club?
A: Yes.
 Q: Has the generator been made available for Mr. McLeish to appraise?
A: No. * * *
 Q: And that generator, how much did it — was — was it purchased for new?
A: I believe a little less than [$]1,000.
Q: Little less than [$]1,000?
A: Uh-huh.
Q: And that remains a marital asset?
A: Yes.
Q: Subject to division by this Court, right?
A: Yes.
 Q: So it should be added to any list of property whether done by you, by your husband or by Mr. McLeish?
A: Correct.
 Q: Would you agree the value on it, then — it's still pretty much new? Hasn't been used other than to test, right?
A: Yes.
Q: And so it's worth $800?
A: Yes.
Q: Do you want to retain that generator?
A: Yes.
Mr. Eddy did not testify about the generator, but his attorney elicited the above testimony from Ms. Adamson. Therefore, all of the evidence shows, and both parties seem to agree, that the generator was marital property. Likewise, both parties seem to agree and the evidence shows that the generator had a value of $800. The evidence only shows that the Eddy's paid a little less than $1,000 for the generator; no evidence was ever introduced to show that the generator was ever worth as much as $1,000. Based on the evidence before us, it is an abuse of discretion for the trial court to find that the generator belonged to Mr. Eddy's father's estate and that it is valued at $1,000.
Mr. Eddy argues that the trial court's error is harmless. Mr. Eddy now contends that the generator belonged to his father's estate and that the $1,000 value could be attributed to Ms. Adamson's financial misconduct. Mr. Eddy contends that the trial court could have found that Ms. Adamson was liable for financial misconduct and penalized her by raising the price to $1,000 because she "secreted" the generator from the appraiser and "hid" it at her place of employment, the Marietta Country Club. Mr. Eddy did not elicit testimony that Ms. Adamson stole the generator or intentionally hid it from the appraiser. Likewise, Mr. Eddy did not argue to the trial court that Ms. Adamson should be penalized for financial misconduct. Therefore, there is no support for Mr. Eddy's argument in the record.
R.C. 3105.171(E)(3) permits a court to make a distributive award if one spouse has engaged in financial misconduct. But the trial court must make a factual finding on the record to support a distributive award for financial misconduct. See Stump v. Stump (Sept. 23, 1994), Athens App. No. 93CA1596. Here, the trial court did not make a factual finding that Ms. Adamson should be penalized for financial misconduct. Mr. Eddy's argument is meritless and Ms. Adamson's ninth assignment of error is sustained.
In her tenth assignment of error, Ms. Adamson argues that the trial court abused its discretion when it failed to include the royalty income from the oil leases in its division of marital assets. We find no merit in this argument.
Ms. Adamson argues that the trial court failed to divide all of the marital assets because it did not include the royalty income from the oil leases. Both parties agreed that the royalty checks did not amount to a lot; in fact, Ms. Adamson estimated that the checks amounted to about $100 a year. Moreover, the trial court properly found that two of the oil leases were part of Mr. Eddy's father's estate and two should be sold with the land. In addition, both parties testified that one of the oil wells provided free natural gas to the log cabin. Even though the trial court did not include the royalty checks in its distribution, Ms. Adamson has failed to show how this omission has prejudiced her. See Civ.R. 61. The distribution is still equitable, especially given the fact that Ms. Adamson continues to receive free natural gas for her home. Therefore, any error by the trial court in failing to distribute the royalty checks is harmless. See Civ.R. 61. The free gas and the royalty checks offset each other. Therefore, the trial court did not abuse its discretion since any error it committed was harmless. Ms. Adamson's tenth assignment of error is overruled.
In her eleventh assignment of error, Ms. Adamson argues that the trial court abused its discretion when it subtracted the value of fixtures to the real estate from Keelan McLeish's appraisal of various equipment and tools. McLeish, at Mr. Eddy's direction, produced an appraisal of marital property consisting of various equipment and tools. McLeish appraised the equipment and tools at $32,335. Instead of hiring an appraiser, Ms. Adamson testified as to her belief regarding the value of this property based upon her background and familiarity with equipment. Ms. Adamson's figure included the value of certain fixtures, i.e. barbed wire fencing, board fence and an implement shed, which were attached to the real estate. Ms. Adamson contends that McLeish's appraisal of tools did not include a value for fixtures to the real estate and therefore, no amount should be deducted from his appraisal. Nevertheless, the trial court subtracted the amounts for these items from McLeish's appraisal. Ms. Adamson argues that this is an abuse of discretion. We agree.
Our review of the record confirms that the barbed wire fencing, board fence and implement shed were not included in McLeish's appraisal. Thus, these items should not have been subtracted from his appraisal of the personalty. The trial court subtracted these items and stated:
"[t]he parties are the owners of various farm equipment and tools of which the fair market value, as appraised by Keelan McLeish, Auctioneer, is $32,335.00. Defendant shall receive these items. However, the appraisal includes items that go with the real estate and should not be included in the personal property received by the Defendant; and those items are as follows: Barbed-wire fencing $1,000.00; Board Fence 1,000.00; Implement Shed 2,763.00; Garage Roof Expense 800.00[2]; Total $5,563.00. Deduction of the above listed items leaves the farm equipment and tools valued at $26,772.00. Defendant shall pay to Plaintiff one-half of the value of the farm equipment and tools, that being $13,386.00."
These items could have been subtracted from Ms. Adamson's valuation, if the court had used it in order to assign value to the personalty. However, since the trial court used McLeish's appraisal, the only adjustment necessary is the $800 for the garage roof expense. Therefore, the trial court's order should be modified so that Mr. Eddy is ordered to pay Ms. Adamson one-half of the value of the farm equipment and tools as appraised by McLeish, a total of $15,767.50. Ms. Adamson's eleventh assignment of error is sustained.
In her twelfth assignment of error, Ms. Adamson argues that the trial court's entire division of marital property is against the manifest weight of the evidence because it is not equitable. Ms. Adamson contends that the trial court's division is inequitable because Mr. Eddy was awarded more of the property. Ms. Adamson also reiterates her argument from the first, second and fourth assignments of error in order to show that the trial court's division is inequitable. We find no merit in Ms. Adamson's argument.
Here, the trial court evenly divided all marital property and marital debts in dispute. For example, the court split the one-half marital interest in the 80 acre parcel evenly, the outstanding first mortgage on that parcel evenly and the interest in the 58 acre parcel evenly. Even though Mr. Eddy may have been awarded more of the actual property, Ms. Adamson received the cash equivalent of one-half of the property awarded to Mr. Eddy.
Ms. Adamson also contends that the trial court did not properly consider R.C. 3105.171(F), which states in part: "In making a division of marital property * * * the court shall consider all of the following factors: (1) The duration of the marriage; (2) The assets and liabilities of the spouses; (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in an asset; (6) The tax consequences of the property division upon the respective awards to be made to each spouse; (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) Any other factor that the court expressly finds to be relevant and equitable."
The statute does not require the trial court to address each statutory factor in its written findings of fact. See Carl v. Carl (July 22, 1999), Ross App. No. 98CA2442. In the absence of an affirmative showing by Ms. Adamson that the court failed to consider the factors, we presume that the trial court followed the statute. Id. Moreover, if Ms. Adamson felt a more detailed analysis of the trial court's entry was necessary, she was free to file a written request for findings of fact and conclusions of law. Id. Ms. Adamson's failure to request additional findings and conclusions precludes her from now arguing that the trial court failed to consider the R.C. 3105.171(F) factors. Id. Except for those adjustments we have already addressed, after reviewing the record and the trial court's division of property, we see nothing arbitrary, unreasonable or unconscionable about this result. Ms. Adamson's twelfth assignment of error is overruled.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Domestic Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment and Opinion.
[1] R.C. 3105.171(A)(2) provides: "During the marriage" means whichever of the following is applicable: (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation; (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
[2] Ms. Adamson is not challenging the setoff for the garage roof expense.