IN RE JANE DOE 1.

[Cite as In re Jane Doe 1 (1991), 57 Ohio St. 3d 135.]

(No. 90-2274—Submitted and decided December 11, 1990—Opinion announced January 24, 1991.)

---

[1] R.C. 2151.85(F) provides in relevant part that "[e]ach hearing under this section shall be conducted in a manner that will preserve the anonymity of the complainant. * * *"

*Alphonse A. Gerhardstein,* for appellant.

SWEENEY, J. The determinative issue before us is whether the court of appeals was correct in affirming the dismissal of appellant's complaint seeking authorization to obtain an abortion without parental notification pursuant to R.C. 2151.85. Stated differently, we must determine whether the trial court abused its discretion in finding that appellant did not prove by clear and convincing evidence that: (1) she is sufficiently mature and well enough informed to decide whether to have an abortion without parental notification; and/or (2) that parental notification of her desire to have an abortion is not in her best interest. Since we find that the trial court did not abuse its discretion in ruling as it did, we affirm the judgment of the court of appeals below.

R.C. 2151.85 provides in pertinent part:

"(A) A woman who is pregnant, unmarried, under eighteen years of age, and unemancipated and who wishes to have an abortion without the notification of her parents, guardian, or custodian may file a complaint in the juvenile court of the county in which she has a residence or legal settlement, in the juvenile court of any county that borders to any extent the county in which she has a residence or legal settlement, or in the juvenile court of the county in which the hospital, clinic, or other facility in which the abortion would be performed or induced is located, requesting the issuance of an order authorizing her to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian.

"The complaint shall be made under oath and shall include all of the following:

"(1) A statement that the complainant is pregnant;

"(2) A statement that the complainant is unmarried, under eighteen years of age, and unemancipated;

"(3) A statement that the complainant wishes to have an abortion without the notification of her parents, guardian, or custodian;

"(4) An allegation of either or both of the following:

"(a) That the complainant is sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian;

"(b) That one or both of her parents, her guardian, or her custodian was engaged in a pattern of physical, sexual, or emotional abuse against her, or that the notification of her parents, guardian, or custodian otherwise is not in her best interest.

"* * *

"(C)(1) If the complainant makes only the allegation set forth in division (A)(4)(a) of this section and if the court finds, by clear and convincing evidence, that the complainant is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, the court shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian. If the court does not make the finding specified in this division, it shall dismiss the complaint.

"(2) If the complainant makes only the allegation set forth in division (A)(4)(b) of this section and if the court finds, by clear and convincing evidence, that there is evidence of a pattern of physical, sexual, or emotional abuse of the complainant by one or both of her parents, her guardian, or her custodian, or that the notification of the parents, guardian, or custodian of the complainant otherwise is not in the best interest of the complainant, the court shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian. If the court does not make the finding specified in this division, it shall dismiss the complaint.

"(3) If the complainant makes both of the allegations set forth in divisions (A)(4)(a) and (b) of this section, the court shall proceed as follows:

"(a) The court first shall determine whether it can make the finding specified in division (C)(1) of this section and, if so, shall issue an order pursuant to that division. If the court issues such an order, it shall not proceed pursuant to division (C)(3)(b) of this section. If the court does not make the finding specified in division (C)(1) of this section, it shall proceed pursuant to division (C)(3)(b) of this section.

"(b) If the court pursuant to division (C)(3)(a) of this section does not make the finding specified in division (C)(1) of this section, it shall proceed to determine whether it can make the finding specified in division (C)(2) of this section and, if so, shall issue an order pursuant to that division. If the court does not make the finding specified in division (C)(2) of this section, it shall dismiss the complaint."

Last year, the United States Supreme Court upheld the facial validity of R.C. 2151.85 on Fourteenth Amendment due process grounds. *Ohio* v. *Akron Center for Reproductive Health* (1990), 497 U.S. \_\_\_, 111 L. Ed. 2d 405, 110 S. Ct. 2972.

A review of the foregoing statutory framework reveals that the juvenile court is vested with a certain amount of discretion in determining whether the minor is sufficiently mature to make the decision to terminate a pregnancy without parental notification, and/or whether parental notification of the minor's desire to obtain an abortion would be in her best interest. While the correctness of a juvenile court's dismissal of a complaint brought under R.C. 2151.85 must be scrutinized on a case-by-case basis, a reviewing court must evaluate the trial court's determination under an abuse of discretion standard. As this court has defined this standard, "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; *it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *" State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149. See, also, *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140.

When applying the abuse of discre-

tion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Berk* v. *Matthews* (1990), 53 Ohio St. 3d 161, 169, 559 N.E. 2d 1301, 1308.

Above all, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge "* * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *" *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 410, 461 N.E. 2d 1273, 1276.

In reviewing the testimony proffered in the cause *sub judice* under this standard, we believe that the trial judge did not abuse his discretion in finding that appellant did not sustain her burden in proving, by clear and convincing evidence, the allegations outlined in R.C. 2151.85(A)(4)(a) or (A)(4)(b).

With regard to the allegation made by appellant that she is sufficiently mature and well enough informed to decide whether to have an abortion without parental notification, the trial court had several factors to weigh as proffered by appellant and Dr. Rauh. On the one hand, appellant is a senior in high school who plans to attend college, and is a person who had a prior experience in the termination of a pregnancy. On the other hand, appellant testified that she had an abortion in June 1990, and is seeking to have another one performed less than a year later. Moreover, appellant testified that each pregnancy was the result of intercourse with a different man. In addition, Dr. Rauh testified that appellant was on a program of birth control, but discontinued it. In light of the foregoing testimony, it was not unreasonable, arbitrary or unconscionable for the trial judge to dismiss the complaint by essentially finding that appellant did not prove her "maturity" allegation by clear and convincing evidence.

With respect to the second allegation in appellant's complaint and at the hearing, *i.e.,* that parental notification would not be in her best interest, or that her father was engaged in a pattern of physical and emotional abuse against her, there was relatively little testimony proffered before the court. While appellant testified that her father threatened to not support her if she ever got pregnant, and that he struck her on two occasions — once for coming home late when she was thirteen or fourteen and another time for getting bad grades on her report card — we do not believe that the trial judge abused his discretion in finding that this did not indicate a pattern of physical, sexual or emotional abuse by either parent, or that parental notification was otherwise not in appellant's best interest. In sum, such evidence, as held by the trial court, was not clear and convincing in establishing the necessity to dispense with parental notification.

Lastly, we note that appellant urges this court to adopt what is essentially a six-factor test for juvenile courts to weigh as factors that are "indicative of a minor's maturity or competence to give informed consent."[2]

---

[2] Appellant's proposed factors are as follows:

"a. Age. Minors fifteen and older should generally be held to possess sufficient maturity to consent to their own abortion without notice to the parent;

While appellant's proposal appears comprehensive in spelling out the various factors that juvenile court judges would in all likelihood consider when evaluating a complaint brought under R.C. 2151.85, we decline to expand the statutory parameters enacted by the General Assembly, since such expansion would clearly involve a legislative function.

Based on all of the foregoing, we hold that absent an abuse of discretion by the juvenile court, the dismissal of a complaint brought by an unemancipated pregnant minor seeking authorization to have an abortion pursuant to R.C. 2151.85 shall not be disturbed.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

HOLMES and RESNICK, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.

MOYER, C.J., DOUGLAS and H. BROWN, JJ., dissent.

WRIGHT, J., concurring. Appellant's proposed criteria (b) through (f) for evaluating a complaint brought under R.C. 2151.85 seem to be appropriate. My review of the record using these criteria and other common-sense factors does not disclose an abuse of discretion by the trial court. Accord-ingly, I concur with the syllabus law and result announced today.

MOYER, C.J., dissenting. The majority holds that the trial court did not abuse its discretion in refusing to allow Jane Doe to have an abortion without parental notification pursuant to R.C. 2151.85, and that to provide a test for juvenile courts to use in determining a minor's maturity and competence "would clearly involve a legislative function." For the reasons that follow, I must respectfully dissent.

The lead opinion states that we must determine whether the trial court abused its discretion in finding that appellant did not prove by clear and convincing evidence that she met the two requirements of the statute, *i.e.*, that she is sufficiently mature and well enough informed to decide whether to have an abortion without parental notification, and/or that parental notification of her desire to have an abortion is not in her best interest.

The plurality then declines "to expand the statutory parameters enacted by the General Assembly, since such expansion would clearly involve a legislative function." It is the opinion of the plurality that this court should not provide a test for juvenile courts to use as they apply R.C. 2151.85 to specific cases.

It is difficult to imagine a case that would provide this court with a more

---

"b. Overall intelligence. The minor should possess sufficient intelligence to understand her situation and her options;

"c. Ability to accept responsibility. Examples could be drawn from life at home, in school or elsewhere;

"d. Ability to assess the future impact of her present choices;

"e. Whether the minor is making an affirmative personal decision and not being forced into her decision by a third person;

"f. Whether the minor will understand the benefits and risks of the abortion procedure and apply that understanding when making her decision."

significant opportunity to assist trial courts in exercising their discretion under a statute than this case. Because I believe that an important responsibility of this court is to assist trial courts in applying the statutorily undefined term "sufficiently mature," I would urge this court to adopt the following factors or indicia of a minor's maturity: (1) age, (2) overall intelligence, (3) emotional stability, (4) credibility and demeanor as a witness, (5) ability to accept responsibility, (6) ability to assess the future impact of her present choices, (7) ability to understand the medical consequences of abortion and apply that understanding to her decision, and (8) any undue influence by another on the minor's decision.

These factors are the same factors referred to in Justice Brown's dissent and that have been adopted by the Superior Court of the Commonwealth of Massachusetts, which has reviewed a parental notification statute similar to R.C. 2151.85.

Regrettably, we have passed an opportunity to assist trial courts of our state in determining the numerous cases that will be filed under a new statute in a difficult area of the law.

If the standards proposed by Justice Brown and by this dissent were to be applied to the facts in this case, I would reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings. I find no evidence in the transcript relating to and no indication that the trial judge considered the question of whether Jane Doe acted under any undue influence by another upon her decision. It is possible to infer that she did not act under undue influence. However, in a case of this nature, it is important that such evidence be direct and that the record reflects that it was considered by the court.

DOUGLAS, J., dissenting. I respectfully dissent from the majority decision because I believe that this court has missed its first (and now maybe only) opportunity to reconcile conflicting decisions and interpretations from various district courts of appeals on the serious question presented. It goes without argument, of course, that one of this court's primary responsibilities is to settle conflicts between the districts and to set guidelines for the bench and bar on matters of great general interest and statewide concern. The matter before us is just such an issue.

While some would like to make this case one of pro-abortion versus anti-abortion or pro-choice versus pro-life, it is nothing of the sort. What we have before us is a case of statutory interpretation — and *only* statutory interpretation. The issue of whether abortion is lawful has been decided by the United States Supreme Court in *Roe* v. *Wade* (1973), 410 U.S. 113, and unless and until that court does something different with that case, this court is bound by the precedent established. Likewise, the General Assembly of Ohio now also has the power, legislatively, to determine the issue. See *Webster* v. *Reproductive Health Services* (1989), 492 U.S. ___, 106 L. Ed. 2d 410, 109 S. Ct. 3040. To date, the General Assembly has taken no action.

Since under present law there is a constitutional right to terminate a pregnancy and that right was being exercised, without parental notification, by young women below the age of eighteen years, the General Assembly of Ohio, in its infinite wisdom, determined that parental notification should be required before such pregnancy could be terminated. In pursuance thereof, the General Assembly enacted R.C. 2919.12(B)(1)(a), which provides that: "No person shall knowingly per-

form or induce an abortion upon a woman who is pregnant, unmarried, under eighteen years of age, and unemancipated * * *'' unless at least one of several exceptions is satisfied.

One of the exceptions is found in R.C. 2919.12(B)(1)(a)(iii) and provides that parental notification is not necessary if "[a] juvenile court pursuant to section 2151.85 of the Revised Code issues an order authorizing the woman to consent to the abortion without notification of one of her parents, her guardian, or her custodian[.]''

In *Bellotti* v. *Baird* (1979), 443 U.S. 622, the court set forth requirements that must be satisfied before legislation providing procedures for bypassing parental involvement would meet constitutional muster. The court said that any such legislation for a bypass procedure must allow the minor to show that she possesses the maturity and information to make her abortion decision, in consultation with her physician, without regard to her parents' wishes. *Id.* at 643. Further, the court said that even if the minor is not mature enough to make the abortion decision herself, then the bypass procedure must allow for a court to determine whether an abortion without parental intervention would be in the minor's best interest. *Id.* at 644.

Recognizing these requirements, the Ohio General Assembly enacted R.C. 2151.85, which gives a minor the option of seeking the approval of a juvenile court in order to bypass parental notification. R.C. 2151.85 was enacted to meet the exception provided for in R.C. 2919.12(B)(1)(a)(iii). R.C. 2151.85 has the two prongs required by *Bellotti* and was found to meet constitutional muster in the case of *Ohio* v. *Akron Center for Reproductive Health*

(1990), 497 U.S. ___, 111 L. Ed. 2d 405, 110 S. Ct. 2972.

It is this statute, R.C. 2151.85, that we are called upon to interpret and to set standards and guidelines to assure its statewide consistent interpretation. I find that it is not only necessary — it is urgent that we do so. We have now seen cases from at least Cuyahoga, Hamilton and Lucas Counties and we have seen at least three different interpretations of how the statute is to be applied. That is why I feel so strongly that we must set standards that will aid our trial courts and courts of appeals in their very delicate and difficult deliberations.

Justice Brown has ably discussed, in his dissenting opinion, the need for standards to be set for the way in which "maturity" (the first prong of the statute) should be determined. He has suggested a litany of eight factors that should and/or could be considered. I concur in his discussion of this first prong of the bypass statute.

The second prong specifically applies to the minor's "best interest." The complaint of the minor must allege this second prong in order for the issue to be before the court. R.C. 2151.85 (C). Of course, if a minor is found to have satisfied the first prong, then the second prong is never reached. If, however, the minor alleges both prongs, but does not meet the "maturity" standard, then the trial court is required to determine whether an abortion without parental involvement would be in the minor's "best interest." R.C. 2151.85(C)(3)(b). Jane Doe placed in issue the second prong of the statute.

In the case at bar, the record shows that the only testimony[3] before

---

[3] I recognize, of course, that by necessity there probably would not be any oppos-

the court relating to this second prong was that Jane Doe's father has a prior history of violence when he became upset with Jane's conduct. He had specifically warned her that he would cut off her support if she ever got pregnant. By Jane's testimony it was established that her father had once struck her so hard that bruises were left on her body. This was when she had come home late. Her father also struck her when she received "Ds" on her report card. If her father cuts off her financial support, it will, Jane says, probably cause her to leave home, secure full-time employment and possibly leave high school and give up or at least delay her plans for further education. Jane testified that if her father discovered that she was pregnant and that she desired an abortion, there was "* * * no telling what he would do to me. I mean, I know he would probably beat me 'cause he has in the past. But that was over something minor. And for something this big to happen, he would respond in the same way."

From this record, it is difficult to see how the "best interest" prong of the statute was not satisfied. In any event, we should set forth these procedures so as to promote as clear an understanding of R.C. 2151.85 as is possible.

Because the lead opinion fails to set forth standards for the uniform application of the statute throughout this state and for the guidance of those who have to make these difficult decisions before they reach this court, I respectfully dissent.

H. BROWN, J., dissenting. R.C. 2151.85 provides that an unemancipated female minor may have an abortion without informing her parents if she proves by clear and convincing evidence, R.C. 2151.85(C)(1), that she "is sufficiently mature and well enough informed to intelligently decide to have an abortion without the notification of her parents, guardian, or custodian," R.C. 2151.85(A)(4)(a). This requirement was held to be constitutional by the United States Supreme Court in *Ohio* v. *Akron Center for Reproductive Health* (1990), 497 U.S. ___, 111 L. Ed. 2d 405, 110 S. Ct. 2972. Since then, the juvenile and appellate courts of this state have struggled, without the benefit of a standard from this court, to determine if the minor is "sufficiently mature."

In this case, we are presented with the opportunity to provide guidance to the lower courts. Such guidance is necessary in order to develop a record (in future cases) which will allow for meaningful appellate review.

In this case, the majority has found no abuse of discretion in the finding below that "Jane Doe" was not "sufficiently mature" under R.C. 2151.85(C)(1). Presumably, the majority did not reach this determination out of thin air. Presumably, the majority used some standard. Thus, it troubles me that the majority refuses to articulate the standard (whatever it may be) on which it has resolved the case. I fear that the standard — which the majority has used but will not reveal — does violence to both the legislative intent of the relevant statute and to the constitutional rights of the appellant.

Because the majority has failed to articulate a standard, and because the

---

ing testimony available and, therefore, the evidence should be clear and convincing that parental notification would not be in the best interest of the minor. Again, it must be the trial judge that makes the determination as to the credibility and weight of the evidence presented.

majority has upheld a decision which I believe to be an abuse of discretion, I must respectfully dissent.

## I
## Standard for Determining Maturity

In enacting R.C. 2151.85(A)(4)(a), the General Assembly recognized that, while most minors would benefit from the "guidance and understanding" of their parents, *Akron Center, supra,* at ____, 111 L. Ed. 2d at 424, 110 S. Ct. at 2984, some are mature enough to be able to make the abortion decision alone.

The determination of whether a minor is "mature" should be made based on how she has conducted her entire life, and not just on the events which have brought her into court. While maturity cannot be determined by resort to a simple, bright-line test, it is possible to identify certain factors which are indicia of maturity, and which may be used to focus the inquiry. These are: (1) the minor's age,[4] (2) overall intelligence, (3) emotional stability, (4) credibility and demeanor as a witness, (5) ability to accept responsibility, (6) ability to assess the future impact of her present choices, (7) ability to understand the medical consequences of abortion and apply that understanding to her decision, and (8) any undue influence by another on the minor's decision.

No one of these factors is, by itself, dispositive, and its relative importance will vary from case to case. In some cases, there will be other areas, not listed here, into which the court will need to inquire. The juvenile court has a responsibility to insure that the relevant facts are fully developed in the record so that it can make an informed determination. Cf. *Matter of Mary Moe* (1988), 26 Mass. App. 915, 916, 523 N.E. 2d 794, 795 (court erred in refusing to hear evidence on minor's medical condition before determining if waiver was in her best interests). A meaningful record cannot be developed when we refuse to articulate the factors which must be considered in making a "maturity" decision.

## II
## Necessity of a Written Opinion

In the instant case, the trial court, after making its findings, simply stated that the complaint would be dismissed, and the court of appeals affirmed without stating its reasoning, other than to say, "that the evidence herein does support the trial court's finding * * *." Conclusory statements such as these give us little on which to base our review. If the application is denied at any level, the court should be required to set forth its findings, reasoning, and conclusions in a written opinion.

In *State, ex rel. Noll,* v. *Indus. Comm.* (1991), 57 Ohio St. 3d 203, 567 N.E. 2d 245, we criticized the Industrial Commission for falling into a practice of making "formal, boilerplate incantations" which provided no insight into why a particular claimant was granted or denied benefits. We said:

"The time has come for the commission to recognize its responsibility to prepare fact-specific orders which will be meaningful upon review. It is well settled that the commission has

---

[4] While age should be considered as a possible indicator of maturity, I would not adopt appellant's proposal that minors aged fifteen or over generally be presumed "sufficiently mature." Such a presumption would cancel the notification requirement by judicial fiat, contrary to the intent of the General Assembly.

the exclusive authority to determine disputed facts and weight of the evidence. * * * [Citations omitted.] However, *a meaningful review can be accomplished only if the commission prepares orders on a case-by-case basis which are fact-specific and which contain reasons explaining its decisions. * * *"* (Emphasis added.) *Id.* at 206, 567 N.E. 2d at 248-249. This principle is no less applicable to cases brought under R.C. 2151.85, and is even more compelling given the limited time which courts have to consider these cases.

### III
### Merits of the Instant Case

As the majority notes, the record indicates that Jane Doe is a seventeen-year-old high school senior. She works twenty to twenty-five hours per week, and pays for her automobile and telephone expenses, and medical care. She is active in team sports, yet she has been able to maintain a 3.0 grade point average. She is preparing to attend college.

Courts in other states with similar statutes have found minors to be "sufficiently mature" on less evidence of maturity. See, *e.g., Matter of Anonymous* (Ala. Civ. App. 1987), 515 So. 2d 1254 (seventeen-year-old dropout with full-time job planning to take GED). Yet, without elaboration, the majority concludes that this overwhelming evidence of maturity is outweighed by the tragic fact that this is Jane Doe's second unwanted pregnancy. I cannot agree. If the fact of suffering an unwanted pregnancy can be characterized as "immature" and then used to outweigh any amount of evidence to the contrary, there is no point to the statutory exemption from parental notification. The record before us clearly and convincingly shows that Jane Doe is "sufficiently mature" within the meaning of R.C. 2151.85 (A)(4)(a). If she is not a "mature minor," then who is?

Accordingly, I would reverse the judgment of the court below and grant Jane Doe's application.