[Cite as *In re Doe*, 2011-Ohio-6373.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 11 CO 34 |
| | ) | |
| JANE DOE | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from the Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio<br>Case No. 2011 AB 0001 |
| JUDGMENT: | Reversed.  Application Granted. |
| APPEARANCES: | |
| For Appellant: | Atty. Virginia Barborak<br>120 S. Market Street<br>Lisbon, Ohio  44432 |

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  December 7, 2011

WAITE, P.J.

{1} Pursuant to R.C. 2505.073, Appellant Jane Doe (hereinafter "J.D." or "Appellant") appeals the decision of the Columbiana County Court of Common Pleas, Juvenile Division, to dismiss her application seeking permission to have an abortion without parental notification, also referred to as a complaint or petition for judicial bypass of parental notification before obtaining an abortion. Pursuant to R.C. 2151.85(A)(4)(a), the application should be granted if the minor establishes that she is sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian. R.C. 2151.85(C) requires the complainant to establish the allegations of the application by clear and convincing evidence. Our review is limited to the following issue: whether J.D. presented clear and convincing evidence that she is sufficiently mature and well enough informed to decide intelligently whether to have an abortion without notification of her parent, guardian, or custodian. We hold that the trial court erred in dismissing the application, and for the reasons that follow, we hereby grant the application.

## CASE HISTORY

{2} The record reflects that J.D. is a few months away from her 18th birthday, is unemancipated, and is four weeks pregnant. On November 2, 2011, she filed an application to have an abortion without parental notification. Counsel was appointed to represent J.D., and a hearing was held on November 4, 2011. The trial court appointed counsel in a dual role, as she was also designated as J.D.'s guardian ad litem. Counsel, in her capacity as guardian ad litem, requested to testify at the

hearing but was denied. J.D. testified at some length, as follows. She is a senior in high school and maintains good grades with a B average. She plans on attending college next year and has chosen a course of study. While she lives at home with her parents, she currently has a job and uses the income to support her own basic needs. Her parents are unable to provide for her or the family. Both father and mother are unemployed. She testified that her parents would not approve of an abortion and would force her to have the baby.

**{3}** She was using an oral contraceptive, but she became pregnant soon after her prescription for birth control ran out. She is in the very early stages of pregnancy. She understood that birth control was primarily her responsibility. She planned to abstain from sexual activity or else return to using other forms of birth control.

**{4}** When J.D. became pregnant, she researched all of her options on the internet, including the option of obtaining an abortion. She learned the steps needed to be taken to have an abortion, the differences between the procedures, where to go to have the procedure performed, how much it would cost, planned who would take her, and investigated the emotional and medical side effects of an abortion. She also researched the legal procedure for obtaining a judicial bypass of parental consent to have an abortion. She established a detailed plan for obtaining an abortion with the help of the father of the child. She prepared and filed the judicial bypass application herself. She testified that she talked extensively with her guardian ad litem about the many potential side effects and described these at some length, including possible

infertility.  She testified that she did not have any specific religious belief system and did not undertake any type of spiritual counseling.  She attempted to speak with personnel at a health clinic but they would not give her any specific information until she obtained a judicial bypass.

{5}     J.D. testified that she understands there are other options besides abortion.  She does not believe that she could give up a child for adoption.  She also stated that she is not emotionally ready to be a mother, and does not have enough life experience to properly raise a child.  She has witnessed the unfortunate consequences of other girls her age who had given birth and were raising children, and she does not desire to become, as she put it, just another statistic.  She believes that if she had the child she would not be able to further her education, would be forced to stay home and care for the child and would then need to resort to public assistance to be able to take care of the child.  She testified that her beliefs and upbringing would make it very difficult to take public assistance or other charity.

{6}     The trial court denied the application.  In a somewhat circular argument, the court used J.D.'s testimony that she did not have enough life experience to take care of a child as evidence that she was not mature enough to decide whether to have an abortion.  The court found that J.D. had not sought professional or medical counseling regarding the potential consequences of an abortion, and that she possessed only general knowledge of abortion procedures.  The court found that Appellant's primary concern for having an abortion was economic inconvenience.

{7} On November 4, 2011, J.D. filed an appeal of the trial court's decision. J.D. filed a brief and a hearing was held on November 9, 2011. This was within the five days allowed by App.R. 11.2(A) and R.C. 2505.073(A).

{8} At this juncture, we must note that the Columbiana County Court of Common Pleas, Juvenile Division, is required to update its forms to conform with the Rules of Superintendence for the Courts of Ohio. Sup.R. Form 23-A is the standard application/complaint form for judicial bypass of parental notification. The application, except for the first page, is to be removed and kept under seal. The second and third pages of the present application were not under seal when the record was delivered to us. Therefore, we have placed those pages under seal. The juvenile court should also examine the standard judgment entry found in Sup.R. Form 23-B to insure that, in the future, its own judgment entry form conforms to standardized form.

ASSIGNMENT OF ERROR

{9} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PETITIONER'S APPLICATION FOR A PARENTAL BYPASS TO OBTAIN AN ABORTION."

{10} In Ohio, an unemancipated minor may legally consent to have an abortion, bypassing notification to her parents or guardian, if a juvenile court finds by clear and convincing evidence that she is sufficiently mature and well enough informed to intelligently decide to have the procedure without notifying her parents, guardian, or custodian. R.C. 2151.84(A)(4)(a). The juvenile court is vested with a certain amount of discretion in determining whether a minor seeking judicial bypass

of parental consent is sufficiently mature to make the decision to terminate a pregnancy. On appeal to this Court, the standard of review is abuse of discretion. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. If the juvenile court's order is not supported by the evidence, the court has abused its discretion. *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552.

{11} To determine maturity, it is helpful for courts to look at a variety of factors including, but not limited to, the following: (1) age; (2) overall intelligence; (3) emotional stability; (4) credibility and demeanor as a witness; (5) ability to accept responsibility; (6) ability to assess the future impact of present choices; (7) ability to understand the medical consequences of abortion and to apply that understanding to the abortion decision; and (8) whether the minor is making an affirmative, independent personal decision. *In re Doe*, 1st Dist. No. C-050133, 2005-Ohio-1559, ¶14, citing *In re Jane Doe 1*, supra, 57 Ohio St.3d at 143 (J. Brown, dissenting).

{12} All of the above factors weigh in J.D.'s favor. She is nearly 18 years old and could soon, lawfully and on her own, make the decision to have an abortion. This is a critically important factor when the complainant is close to her 18th birthday: "We find to be of particular significance the fact that appellant will be 18 and would have been able to have an abortion without notifying her parents within the next month." *In re Doe*, 10th Dist. No. 03AP-1185, 2003-Ohio-6509, ¶8. J.D. is intelligent

and maintains good grades in school. There is nothing in the record that indicates emotional instability. The trial court did not mention that he had any issues regarding her credibility. She freely accepted responsibility for her pregnancy and for her choices. Immediately upon becoming pregnant, she began to research her options. She articulated the medical risks and consequences of having an abortion and evidenced that she was well aware of the potential risks. The record indicates that the decision to have an abortion is her own and is not influenced by outside parties.

{13} The facts of this case are very similar to those in *In re Doe*, 1st Dist. No. C-100217, 2010-Ohio-2075. In that case, the juvenile complainant was almost 17 years old, was nine weeks pregnant, lived with her mother, had her own job, earned good grades in school, and had researched the abortion procedure and its potential future medical and emotional side effects. She had a plan for her future that she felt would likely be ruined by having the child, and it was clear that she believes her parents would not allow an abortion. She testified that she was not physically, emotionally or financially ready to care for a child. She spoke with school nurses about her pregnancy, and they gave her some information and referred her to Planned Parenthood. She also spoke to her sister and a social worker. She met with a doctor to review a consent form. She considered the three main options that she could take: parenting, adoption, and abortion. She believed that abortion was the best of all her available options. The trial court denied the application, but the judgment was reversed on appeal as an abuse of discretion, and judicial consent to have an abortion was granted.

**{¶14}** The main difference between the instant case and *In re Doe* is that the juvenile in the First District case spoke with more unrelated adults about the abortion than did Appellant. The trial judge in this case based its decision in part on the fact that Appellant "has not sought or received professional or medical counseling regarding the potential consequences to assist her in her decision." (11/4/11 J.E., p. 1.) We are aware of no legal requirement that a minor obtain any particular professional counseling prior to filing the application for judicial bypass. The record actually indicates that Appellant attempted to obtain professional advice. She contacted an abortion clinic but they told her she must obtain a judicial bypass before they could consult with her. The record does not indicate why she was given this answer, but we are aware that "[t]he potential civil liability and criminal penalties attached to providing medical care to a minor absent a parent's consent, and an abortion in particular, are sufficient to dissuade those sources from meeting with a minor to even discuss abortion." *In re Jane Doe*, 2d Dist. No. 02CA0067, 2002-Ohio-6081, ¶13.

**{¶15}** Appellant primarily consulted with her guardian ad litem, who was also acting as appointed counsel in this case. The record indicates that the trial judge would not allow the guardian ad litem to testify at the hearing despite two requests to do so. (11/4/11 Tr., pp. 3-4.) The trial court told the guardian ad litem that any statement she made would not qualify as evidence. (11/4/11 Tr., p. 4.) The function of a guardian ad litem is to protect the interests of the minor and be the minor's advocate. Juv.R. 4(B); *In re S.B.*, 11th Dist. No. 2010-A-0019, ¶98. The trial court

prevented the guardian ad litem from exercising these functions. The refusal to either allow the guardian ad litem to testify, or to appoint a separate guardian ad litem who could testify or submit a report, is error in this case. It is clear to us that the guardian ad litem spoke extensively to Appellant about the risks of abortion, about the options available other than abortion, about the technical details of the abortion procedure, and about counseling options. The guardian ad litem evinced a clear belief that Appellant was mature enough to decide, without her parents consent, whether or not to have an abortion. This is information the trial judge should have placed into the record and relied on in making its decision.

{16} The record does reflect that the trial judge made its decision in large part on its conclusion that the reason J.D. was seeking an abortion was "economic inconvenience." (11/4/11 J.E., p. 2.) The trial court is permitted, in its discretion, to consider economic factors in determining whether to grant judicial bypass. *In re Doe*, 1st Dist. No. C-050133, 2005-Ohio-1559, ¶9; *In re Doe*, 1st Dist. No. C-100217, 2010-Ohio-2075, at ¶17. However, the judicial bypass statute does not permit a trial court to deny judicial bypass simply because the juvenile may be motivated to seek an abortion, in part, in order to avoid future financial hardship. The complainant is called upon to prove maturity, not rationale, and awareness of the economic impact of having a child is a sign of maturity. It would be the rare scenario in which financial concerns would not be a factor in considering whether or not to have a child. Thus, it was error for the trial court to determine that it could deny judicial bypass because it

did not consider "economic inconvenience" to be a worthy rationale in seeking an abortion.

{17} Finally, the trial court was expressly concerned that Appellant had not sought counseling on the alternatives to abortion, and only had general knowledge about the alternatives. There is no requirement that the juvenile seek out alternatives to abortion. *In re Jane Doe*, 2d Dist. No. 02CA0067, 2002-Ohio-6081, ¶14. We must emphasize, however, that the record here indicates that Appellant did consider alternatives, particularly looking at the possibility of adoption, and she concluded it was not a viable option.

{18} Accordingly, given that there is ample evidence of record that J.D. is "sufficiently mature and well enough informed to make an intelligent decision," we hold that the trial court's decision to deny her application was unreasonable and constitutes an abuse of discretion. The record before us presents almost a textbook example of a minor for whom this statute was enacted. In reaching this conclusion, we emphasize that "[t]he law must be followed, whether or not it fits our personal preferences. To refuse to grant permission in this case would be to render R.C. 2151.85 meaningless." *In re Doe*, 1st Dist. No. C-020443, 2002-Ohio-3926, ¶5. Appellant's assignment of error is sustained. We reverse the judgment of the trial court, and the application of Jane Doe is granted. She is hereby authorized to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian.

**{19}** "If appellant believes that this opinion may disclose her identity, appellant has the right to appear and argue at a hearing before this court. Appellant may perfect this right to a hearing by filing a motion for a hearing within fourteen days of the date of this opinion.

**{20}** "The clerk is instructed that this opinion is not to be made available for release until either of the following:

**{21}** "(a) Twenty-one days have passed since the date of the opinion and appellant has not filed a motion;

**{22}** "(b) If appellant has filed a motion, after this court has ruled on the motion.

**{23}** "Notice shall be provided by mailing a copy of the opinion to the attorney for the appellant or, if she is not represented, to the address provided by appellant for receipt of notice." App.R. 11.2(B)(7).

Donofrio, J., concurs.

DeGenaro, J., dissents; see dissenting opinion.

DeGenaro, J., dissenting.

**{24}** While I agree with the majority that the trial court erred by not permitting the guardian ad litem to testify, I dissent from their ultimate conclusion. The central issue in bypass cases where abuse is not involved is the trial court's assessment of the petitioner's maturity, which is made on a multi-dimensional level. The one-dimensional perspective of the appellate record deprives this court of many tools the trial court has available to it when considering a petitioner's maturity; thus the standard of review is abuse of discretion. When comparing the facts in this case to other cases both granting and denying bypass applications, I cannot say the trial court abused its discretion and would affirm.

**{25}** The trial court did err by not permitting the GAL, who also served as counsel, to testify about the applicant's maturity. However, we can glean from the record that the GAL believed J.D. was mature; specifically, how the GAL framed leading questions to J.D. The trial court should have permitted the GAL to testify *in addition* to J.D.

**{26}** In that regard, the following exchange took place:

**{27}** "THE COURT: I want to interrupt a little bit. An important part of my decision making process is for me to deem her understandings, her information.

**{28}** "COUNSEL: Ok.

**{29}** "THE COURT: You know I want to give as much latitude as I can and be sensitive to the situation at her age. But if the nature of the questions are so leading as to provide the answers first, I can't independently determine the situation."

**{30}** Thereafter, counsel asked more open ended questions, and the trial court asked J.D. questions as well, in order to assess her maturity as contemplated by the statute.

**{31}** Determining whether a minor has sufficient maturity to be granted her bypass application requires a multi-dimensional assessment by the trial court, taking into consideration the factors outlined by the majority above. This entails the trial court observing J.D.'s demeanor during questioning, and how she answered. Here, the questions were of a general, boilerplate nature. For example:

**{32}** "Q: And you also have a job is that true?

**{33}** "A: Yes.

**{34}** "Q: How long have you had that job?

**{35}** "A. I have been working there for a year.

**{36}** "Q: And is it fair to say that basically what money you make from that job takes care of all of your needs is that correct?

**{37}** "A: Yes.

**{38}** Q: Is it fair to say that in your home finances are a [sic] such that your parents really don't have any money to contribute to your wellbeing: That you basically support yourself?

**{39}** "A: Yes.

**{40}** "Q: Other then [sic] the roof and the food that they provide for you is that correct?

**{41}** "A: Yes."

**{42}** This type of exchange makes it difficult to test the minor's maturity because she is merely giving yes or no answers to very general, non-specific questions.

**{43}** Reviewing more substantive answers that were more revealing to J.D.'s home environment and maturity, the record reveals that J.D.'s father and mother are not presently working, but the family does have a limited source of income. J.D. testified that her mother was aware that she and her boyfriend were having sex, and required J.D. to obtain and pay for her birth control.

**{44}** J.D.'s investigation regarding abortion involved: 1) researching on the internet about the bypass process, where to go for an abortion, what the general side effects were, and one abortive procedure, i.e., the abortion pill if the pregnancy is less than 90 days; 2) contacting a clinic that merely advised J.D. that she needed to apply for a bypass in order to obtain abortion services and call back after that; no specific information was provided; and 3) posing a hypothetical to her mother about a "friend's" contemplation of an abortion, to which J.D.'s mother responded that side

effects were possible and did not inquire if J.D. herself was pregnant.  J.D. gave no testimony whether her mother responded positively or negatively to this hypothetical.

**{45}**   J.D. testified that she was in general good health and had been to the family doctor during the summer, but did not consult a medical professional for any information.  J.D. only answered "yes" when counsel asked if she had someone to take her to the abortion, and regarding aftercare in the event of side effects testified: "* * * regardless of what my parents say I am going to ask them to take me to the doctor and I will just speak with the doctor privately and tell them that I did have an abortion and um my parents don't need to be notified about it."  When asked about the risk of future infertility, J.D. responded "Yes, I understand that things could go wrong and it could affect your woman, it could affect your mothering parts I guess * * *"

**{46}**   J.D. further testified that her birth control prescription had run out the "beginning of last month" and did not get it refilled because she had to go back to the doctor for a pap test, and continued to have sex after she stopped taking the pills, and alternative protection had failed.

**{47}**   J.D. also gave contradictory testimony.  When asked how she would prevent future pregnancies, at first she testified that she would abstain, but then later testified:

**{48}**   "Q:  Ok and we also talked about that and you are still going to remain with your boyfriend correct?

**{49}**   "A:  Yes.

**{50}**   "Q:  And that uh that might not always be the case that you are going to abstain from sex.

**{51}**   "A:  Yes.

**{52}**   "Q:   So what are you going to do to prevent another unplanned pregnancy?

**{53}**   "A:  I am going to schedule a doctor's appointment to get back on my birth control to get my prescription refilled."

**{54}** J.D. gave no explanation as to why she believed her parents wouldn't consent to an abortion, and gave contradictory testimony regarding her mother's reaction:

**{55}** "JANE DOE: If I talked to my mother and I told her it was in my very best interest, if I was already having, or already scheduled to have the abortion and told her all of my reasoning I am sure she would be mad. She would be very upset with me but eventually she would get over it.

**{56}** "THE COURT: She might be supportive though?

**{57}** "JANE DOE: No, she wouldn't be supportive but she would because I am her daughter she would get over it."

**{58}** Considering the record before us, J.D. did not demonstrate her maturity by clear and convincing evidence as the minor did in *In re Jane Doe*, 1st Dist. No. C-100217, 2010-Ohio-2075, where the First District correctly reversed the trial court and granted the bypass application:

**{59}** "Doe filed a complaint with the juvenile court on April 6, 2010, seeking an abortion without parental notification. At the hearing, Doe testified as follows: She is currently 16 years old, but will turn 17 in less than three months. At the time of the hearing, she was nine weeks' pregnant and living with her mother. Doe's parents are divorced, and her mother has legal custody of her. She does not have a good relationship with her father-she rarely sees or communicates with him-and thus does not want to discuss her situation with him. Doe does not want to tell her mother about her pregnancy and her decision to seek an abortion, because her mother is vehemently opposed to abortion. Her mother thought that it was wrong when Doe's cousin, who had become pregnant as a result of an incestuous rape, had an abortion.

**{60}** "Doe is completing her junior year in high school. Her grades are mostly Bs and Cs. She has been selected to participate in a program during her senior year in high school where she will not only complete her high-school course requirements but also begin taking college-level courses . It is an honor to be selected for this program. Currently, she is participating in a work-study program

where she completes her core curriculum each day and then works at least 15 hours each week.

**{61}** "Doe wants to join the military after high school, although she ultimately plans to become a firefighter. She currently volunteers at a local fire department.

**{62}** "Doe has her own bank account and credit card, both of which she personally manages. She often buys her own clothes, food, and other necessities. She has assumed this financial responsibility because her mother has limited financial resources. Jane Doe also voluntarily spends each weekend with her grandparents, helping them with cleaning, grocery shopping, and medical issues-her grandfather is nearly blind and her grandmother has health issues.

**{63}** "Doe testified that she became pregnant as a result of her first sexual encounter. Her partner was a 17-year old young man whom Jane Doe had been dating for four months. They had used birth control, but it failed when the condom tore. Upon learning that Doe was pregnant, her partner ended their relationship. But he has agreed to pay for part of the abortion because he also wants Doe to have the abortion. Doe testified that she will wait until she is older to have a sexual relationship again, and upon doing so, she will use an oral contraceptive.

**{64}** "When Doe realized that she might be pregnant, she went to speak with both of the school nurses. Although the nurses counseled her to talk to her parents, when Jane Doe told them that she did not think that such a conversation was in her best interest, they provided her with pamphlets about pregnancy and her options, and they reviewed those options with her. The nurses also arranged a doctor's appointment at a local medical center where Doe had an ultrasound that confirmed the pregnancy. The nurses also referred Doe to Planned Parenthood in Hamilton County. In addition to both of the school nurses, Doe met with one of her teachers to discuss her situation. She also talked to her older sister, who is 22 years old and will be entering medical school this fall. Doe said that, of those adults she spoke with, some counseled her to remain pregnant and others supported her decision to terminate the pregnancy.

**{65}** "Doe made an appointment with Planned Parenthood. During her four-hour meeting, she had a sonogram confirming that she was nine weeks' pregnant and received information concerning both the risks associated with carrying a pregnancy to full term and the risks associated with having an abortion. She also met with a social worker to review all the information she had received, as well as meeting with a doctor to review the 24-hour consent document.

**{66}** "Finally, Doe testified that she is not physically, emotionally, or financially ready to care for a child. She indicated that she has considered all three of her choices carefully-parenting, adoption, and abortion-and is 'certain' that the best option for her is abortion.

**{67}** "The social worker from Planned Parenthood also testified at the hearing. She indicated that she had discussed with Doe all of her options and the risks associated with an abortion. The social worker believed that Doe understood the information they had reviewed and had asked appropriate questions. The social worker opined that Doe is sufficiently mature and well enough informed to decide intelligently whether to terminate her pregnancy. The social worker also testified that she believed that Doe's decision is completely her own.

**{68}** "The court-appointed guardian ad litem testified that she had twice spoken at length with Doe on the phone and had met with her once. The guardian ad litem testified that it is in Doe's best interest to have an abortion without notifying her parents. In support of this opinion, the guardian ad litem noted that Doe's mother is remarrying this summer and that Doe does not get along well with her mother's fiancé. The guardian ad litem also noted that Doe does not have a significant relationship with her father." Id. at ¶2-11.

**{69}** The extent of evidence before the trial court here is akin to the facts in *In re Jane Doe,* 8th Dist. No. 92232, 2008-Ohio-5473, where the Eighth District correctly affirmed the trial court, and denied the bypass application:

**{70}** "Appellant is sixteen years old. She has a high grade point average, has held part-time employment and participated in an extracurricular activity. Under the totality of the record, however, this is insufficient to show an abuse of discretion.

Cf. *In Re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.[1] Although Appellant is bright, much of her testimony reflected immaturity. She, to borrow a phrase used in the lower court, seemed to engage in 'magical thinking' that she would not become pregnant from having unprotected sex. She stated that she would simply stop having sex until she was married or established in her career, but she acknowledged that she had been sexually active for a year and has a steady boyfriend.

{71} "Moreover, her decision seems to be the product of her 'panic' and desire for a quick solution. This weighs against a conclusion that she has engaged in well-reasoned and careful decision-making. See *In Re Jane Doe 01-01* (2001), 114 Ohio App.3d 20, 749 N.E.2d 807. She immediately sought the counsel of her boyfriend who then arranged for her to speak with someone who had faced a similar issue and then had obtained an abortion. This somewhat negates a finding of introspection in weighing the consequences. She has been having sex, largely without contraception, for an extended period of time and this is indicative of the need for parental guidance. Cf. *In Re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

{72} "In addition, although there was testimony that Appellant's parents would be disappointed in her, she admitted that she and her mother were very close. Cf. *In Re Jane Doe* (1999), 134 Ohio App.3d 569, 731 N.E.2d 751 (abuse of discretion established where the minor was sufficiently mature and well-informed and feared that already tenuous relationship with her parents would be further impaired). Finally, although the counselor from the court's diagnostic center stated that Appellant 'qualifies' under the prevailing standards, he admitted that her personality included both indications of maturity and immaturity and that she was somewhere in the middle on the 'continuum of maturity.'" Id. at ¶16-18. (footnote omitted)

{73} I disagree with the majority that J.D. demonstrated her maturity by clear and convincing evidence as did the minor in the First District case cited in the majority in ¶13 and this dissent at ¶58. I also disagree with the conclusion of the majority and the Second District in *In re Jane Doe*, 2d Dist. No. 02CA0067, 2002-

Ohio-6013 that internet research regarding information about a medical procedure and possible side effects is sufficient investigation, and that medical professionals fearful of civil or criminal penalties would not discuss medical issues surrounding abortion with a minor absent parental consent; that a counselor from Planned Parenthood testified in the First District case cited by the majority and this dissent refutes this contention. More importantly, it is critical to the minor's health and informed decision making to talk to a medical professional. J.D.'s testimony in this regard is very limited.

{74} Because J.D. did not establish her maturity by clear and convincing evidence, I conclude that the trial court did not abuse its discretion by denying the bypass application, and would affirm the judgment of the trial court.