[Cite as *In re Complaint of Doe*, 2024-Ohio-2140.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

            :

| | | |
|---|---|---|
| In re Complaint of Jane Doe, | : | |
| | | No. 24AP-217 |
| Jane Doe, Appellant. | : | (C.P.C. No. 24JA-03-02) |
| | : | (ACCELERATED CALENDAR) |
| | : | |

D E C I S I O N

Rendered on June 4, 2024

**On brief:** *Trudy D. Farrar*, for appellant. **Argued:** *Trudy D. Farrar.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

PER CURIAM.

{¶ 1} The Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile court") dismissed the complaint of appellant, Jane Doe, a minor, seeking a judicial bypass order authorizing her to consent to an abortion under R.C. 2151.85. Jane Doe appealed. For the following reasons, we reversed the juvenile court judgment and issued the order.

{¶ 2} On March 26, 2024, Jane Doe filed a complaint under R.C. 2151.85, which allows an unmarried, pregnant minor to request "the issuance of an order authorizing her to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian." The juvenile court held a hearing on her request the same day. Jane Doe, her attorney, and an advocate for Jane Doe from the Ohio Abortion Fund appeared.

{¶ 3} Jane Doe testified that she was a resident of Franklin County. (Mar. 26, 2014 Tr. at 5.) She did not live with her parents and was in the custody of Franklin County

Children Services ("FCCS"), living in a group home. *Id.* at 5-6. She stated that she was in contact with her parents and had discussed her desire to have an abortion with them. *Id.* at 6.

{¶ 4} Jane Doe affirmed that a physician had diagnosed her pregnancy and that she had undertaken counseling concerning abortion. *Id.* She also affirmed that she had been advised about the health risks involved in pregnancy and abortion, as well as alternatives to abortion such as adoption. *Id.* at 6-7. She had been counseled on birth control and affirmed that she would be able to access it and use it in the future. *Id.* at 10.

{¶ 5} Jane Doe stated that she was a few months away from her 18th birthday and was attending high school, where she had "at least average" grades and participated in extracurricular activities. *Id.* at 7-8. She expressed her desire to live independently after high school graduation, but felt that she could not provide for or be responsible for a child on her own. *Id.* at 8-9. She stated that the father could not be responsible for a child either. *Id.* at 9.

{¶ 6} The juvenile court also heard testimony from Morgan Mitchell, a Legal Access Fellow from the Ohio Abortion Fund. Ms. Mitchell testified that Jane Doe's mother "was no longer supportive of going to the appointment with the minor" and "did not want to be involved anymore." *Id.* at 13.

{¶ 7} The juvenile court asked Jane Doe to confirm that her parents knew that she wanted to have an abortion. *Id.* at 10-11. After she confirmed this, the court responded: "Then I don't know why we're here." *Id.* at 11. The court stated that it "specifically" had to "find that no parent, guardian or custodian of the complainant has been notified that she is seeking an abortion" before it could issue a bypass order. *Id.* at 14. Because Jane Doe had told her mother that she wished to have an abortion, the court concluded that it did not "have jurisdiction." *Id.*

{¶ 8} Jane Doe's attorney argued that the parents' "failure to follow through" with supporting her decision to have an abortion meant that she needed the court to issue the order for judicial bypass. *Id.* at 17. Nevertheless, the juvenile court concluded that it could not "grant the [request] at this time" because it had to "find certain things" before it could issue the order. *Id.* at 17-18. First, it had to find "that the child is * * * an unemancipated minor. The second, the Court must find [that] the [complainant is] pregnant and she wishes to have an abortion * * *." *Id.* at 18. The "third" finding that the juvenile court stated

that it had to make was that "no parent, guardian, or * * * custodian of the complainant has been notified that she is seeking an abortion." *Id.* The juvenile court dismissed the testimony of Ms. Mitchell as "hearsay evidence" and pointed out that "there was no testimony that the child was presented for an abortion and that the parents did not show up." *Id.*

{¶ 9} The juvenile court then addressed "several things" Jane Doe had testified to as part of her burden to show by "clear and convincing evidence" that she was "of proper maturity to make this decision," calling them as "very light as well." *Id.* at 18-19. Describing Jane Doe as her attorney's "ward," the court stated that she "could not testify as to what the alternatives were until you fed her the answer. Did you consider an adoption?" *Id.* at 19. The juvenile court criticized Jane Doe for not describing "the possible outcomes of an abortion" when asked and failing to reply such outcomes might include that "she [might] not have a child again, [or] possible death." *Id.* The juvenile court concluded that it could not issue the order "unless she fully understands the consequences and the risks involved," but Jane Doe had not "articulated that here today in front of the Court. Those are the several reasons why I cannot grant this petition today." *Id.* Accordingly, the juvenile court dismissed the complaint. (Mar. 26, 2024 Jgmt.)

{¶ 10} Jane Doe exercised her right of an immediate appeal under R.C. 2505.073. In her brief, she argued that the juvenile court made four erroneous findings, which we construed as four assignments of error, all asserting that the juvenile court erred when dismissing her petition. On March 29, 2024, after oral argument, we sustained the assignments of error and granted Jane Doe's request for an order under R.C. 2151.85, without remand to the juvenile court.

{¶ 11} We typically review a juvenile court's denial of a complaint seeking judicial bypass of parental consent for an abortion under an abuse of discretion standard. *In re Jane Doe 1*, 57 Ohio St.3d 135 (1990), syllabus. An unreasonable, arbitrary, or unconscionable ruling is an abuse of discretion. *E.g.*, *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 12, citing *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An arbitrary ruling lacks an " 'adequate determining principle' " and is " 'not governed by any fixed rules or standard.' " *Downey v. 610 Morrison Rd., LLC*, 10th

Dist. No. 07AP-903, 2008-Ohio-3524, ¶ 11, quoting *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981). An unconscionable decision " 'affront[s] the sense of justice, decency, or reasonableness.' " *U.S. Bank Natl. Assn. v. Collier*, 10th Dist. No. 08AP-207, 2008-Ohio-6817, ¶ 19, quoting Black's Law Dictionary (8th Ed.2004). In addition, "a court abuses its discretion when its ruling is based on an error of law or a misapplication of law to the facts." *Harris v. Cunix*, 10th Dist. No. 21AP-13, 2022-Ohio-839, ¶ 9.

**{¶ 12}** R.C. 2151.85 governs the procedure for obtaining a judicial bypass order from the juvenile court. *See also* R.C. 2919.121(C) (providing a similar procedure for granting "[t]he right of a minor to consent to an abortion") and *In re Doe*, 2d Dist. No. 02CA0067, 2002-Ohio-6081, ¶ 2 (describing R.C. 2151.85 and R.C. 2919.121(C) as "parallel provisions"). A minor must file a complaint stating that she is pregnant, that she is an unemancipated and unmarried minor, and that she "wishes to have an abortion without the notification of her parents" or legal guardian. R.C. 2151.85(A). In addition, the complaint must allege either or both of the following:

> (a) That the complainant is sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian;
>
> (b) That one or both of her parents, her guardian, or her custodian was engaged in a pattern of physical, sexual, or emotional abuse against her, or that the notification of her parents, guardian, or custodian otherwise is not in her best interest.

R.C. 2151.85(A)(4).

**{¶ 13}** The juvenile court must hold a hearing on the complaint within five days. R.C. 2151.85(B)(1). If the "complainant makes only the allegation set forth in division (A)(4)(a)," as is the case here, and "the court finds, by clear and convincing evidence, that the complainant is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, the court shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian." R.C. 2151.85(C)(1).

**{¶ 14}** The juvenile court first erred by ruling it lacked "jurisdiction" in this case. In its most general sense, jurisdiction refers to a court's "statutory or constitutional power to

adjudicate the case" before it. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). In spite of its professed lack of jurisdiction, which by definition meant that it lacked the power to adjudicate Jane Doe's complaint, the juvenile court went on to do just that. This suggests that the juvenile court misunderstood the term. "The general term 'jurisdiction' can be used to connote several distinct concepts, including jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 18, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11-12. The juvenile court did not lack subject matter jurisdiction. The statute specifically identifies "the juvenile court of the county in which" the minor resides as the proper venue for filing the complaint seeking a judicial bypass order and grants that court the power to issue the order. R.C. 2151.85(A); R.C. 2151.85(C)(1) (stating that the juvenile court "shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian" if criteria met). The juvenile court's personal jurisdiction over Jane Doe is incontrovertible because she "submitted to the court's jurisdiction by filing the complaint." *Moore v. Mt. Carmel Health Sys.*, 162 Ohio St.3d 106, 2020-Ohio-4113, ¶ 34.

{¶ 15} The juvenile court's reasoning suggests that Jane Doe's failure to satisfy several requirements that the court incorrectly believed were prerequisites to granting the relief resulted in a lack of jurisdiction over this "particular case." *Kucha* at ¶ 18. For example, the juvenile court believed that it could not issue the bypass order because Jane Doe had informed her mother that she wanted an abortion. However, the statute contains no jurisdiction-stripping provision that applies if a complainant informs a parent or guardian. The only such provision in either of Ohio's judicial bypass statutes is in R.C. 2919.121(C)(4): "No juvenile court shall have jurisdiction to rehear a petition concerning the same pregnancy once a juvenile court has granted or denied the petition." Nothing in the record indicates that Jane Doe had filed a successive petition.

{¶ 16} The juvenile court also stated that it "specifically" had to "find that no parent, guardian or custodian of the complainant has been notified that she is seeking an abortion" as a condition of issuing the bypass order. (Tr. at 14.) But the statute contains no such requirement. The statute required Jane Doe to state in her complaint that she "wishe[d] to have an abortion without the notification of her parents" or legal guardian. R.C. 2151.85(A).

Whether or not she actually did so is not part of the standard for decision-making when issuing a bypass order. A juvenile court's only task is to determine whether the evidence clearly and convincingly shows "that the complainant is sufficiently mature and well enough informed to decide intelligently whether to have an abortion," and if so, "the court shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian." R.C. 2151.85(C)(1). Here, however, the juvenile court redrafted this standard to require the complainant to clearly and convincingly show not only her maturity, but that she did not notify her parents, guardian, or custodian of her intent.

{¶ 17} In any case, the notification and consent of Jane Doe's mother was irrelevant to the judicial bypass request. Jane Doe was in the legal custody of FCCS, and the statute required her to state that she "wishes to have an abortion without the notification of her parents, guardian, or custodian." R.C. 2151.85(A)(3). Lack of notification of any one of the three would satisfy the pleading requirement, and there was nothing to indicate that FCCS had been notified of Jane Doe's intent. Thus, the juvenile court incorrectly concluded that she had not met the requirement it imposed on her.

{¶ 18} The Supreme Court of Ohio has rejected the suggestion that any standard apart from that stated in R.C. 2151.85 should guide a juvenile court when considering a judicial bypass request. *In re Jane Doe* 1, 57 Ohio St.3d 135, 138 (1990) (rejecting the suggestion that it adopt "what is essentially a six-factor test for juvenile courts to weigh as factors that are 'indicative of a minor's maturity or competence to give informed consent' "). *See also In re Complaint of Doe*, 83 Ohio App.3d 98, 101-02 (10th Dist.1993) (stating that "it would be improper" to add requirements to those required by the statute "in light of the Supreme Court's decision in *In re Jane Doe 1*"). Nevertheless, the juvenile court imposed a requirement that Jane Doe show up for an appointment without a parent and be refused an abortion before it could issue a bypass order. This is apparent because one of its stated reasons for refusing Jane Doe's request was that "there was no testimony that the child was presented [sic] for an abortion and that the parents did not show up." (Tr. at 18.)

{¶ 19} There is no basis in the statute for imposing such a requirement on the minor. In Ohio, a pregnant, unemancipated minor cannot obtain an abortion unless "[t]he attending physician has secured the informed written consent of the minor and one parent, guardian, or custodian," or the court provides authorization. R.C. 2919.121(B)(1). To insist

that a minor undergo the ordeal of showing up alone for an appointment and be affirmatively refused care before she can seek a judicial bypass order is an unreasonable burden that is at odds with not only the language of the statute, but also with Jane Doe's right "to make and carry out [her] own reproductive decisions" under the Ohio Constitution. Ohio Constitution, Article I, Section 22.A & Section 22.B (stating that "[t]he State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against * * * [a]n individual's voluntary exercise of this right"). This arbitrary requirement lacked an "adequate determining principle" and was "not governed by any fixed rules or standard." *Downey*, 2008-Ohio-3524, at ¶ 11. It was also unconscionable because it "affront[ed] the sense of justice, decency, or reasonableness." *Collier*, 2008-Ohio-6817, ¶ 19. For this and the other reasons discussed, we conclude that the entirety of the juvenile court's discussion was "unsupported by a sound reasoning process." *Lias*, 2007-Ohio-5737, at ¶ 12. Thus, the juvenile court abused its discretion by dismissing Jane Doe's complaint on the stated grounds.

{¶ 20} Our review of the record shows that Jane Doe clearly and convincingly demonstrated that she was "sufficiently mature and well enough informed to decide intelligently whether to have an abortion," and was therefore entitled to have the bypass order issued. R.C. 2151.85(C)(1). Jane Doe testified that she was months away from her eighteenth birthday, and we have previously held that proximity to the age of maturity weighs heavily in a complainant's favor when determining maturity. *In re Doe*, 10th Dist. No. 03AP-1185, 2003-Ohio-6509, ¶ 8 (finding it "to be of particular significance the fact that appellant will be 18 and would have been able to have an abortion without notifying her parents within the next month"). The juvenile court made no mention of her age, but we believe it is a "critically important factor" in evaluating maturity. *In re Doe*, 7th Dist. No. 11 CO 34, 2011-Ohio-6373, ¶ 12 (describing weight given to fact of complainant's proximity to 18th birthday). *See also In re Doe*, 2d Dist. No. 02CA0067, 2002-Ohio-6081, ¶ 14 (reversing juvenile court's dismissal of R.C. 2151.85 complaint and stating that "maturity is generally viewed to increase with age").

{¶ 21} Jane Doe testified that she had consulted with a physician and had undergone counseling, that she knew of the health risks and alternatives, and that she was going to use birth control in the future. All of these facts demonstrate a degree of maturity that is consonant with granting her request, and in fact surpasses the efforts of others seeking

judicial bypass. *See id* at ¶ 13 (stating that it was "unreasonable" for the juvenile court "to find that she is not well enough informed about abortion" because the complainant had not yet spoken with a physician before filing the complaint, although she had sought information from other sources). Jane Doe also demonstrated maturity by facing the economic reality of pregnancy, admitting that neither she nor the father could provide for a baby. Jane Doe's proximity to adulthood, her efforts to educate herself about the procedure and consult with a physician, her resolve to use birth control in the future, and honesty about her situation all clearly and convincingly demonstrate that she is "sufficiently mature and well enough informed to decide intelligently whether to have an abortion," as required by R.C. 2151.85(C)(1).

{¶ 22} For the foregoing reasons, the juvenile court abused its discretion when dismissing Jane Doe's complaint under R.C. 2151.85. Accordingly, we reverse the decision of the juvenile court and, for the reasons stated, issued the order she sought.

> The following notice is provided in accordance with Sup.R. 25(G):
>
> If appellant believes that this opinion may disclose her identity, appellant has a right to appear and argue at a hearing before this court. Appellant may perfect this right to a hearing by filing a motion for a hearing within fourteen days of the date of this opinion.
>
> The clerk is instructed that this opinion is not to be made available for release until either of the following:
>
> - Twenty-one days have passed since the date of the opinion and appellant has not filed a motion;
>
> - If appellant has filed a motion, after this court has ruled on the motion.

*Judgment reversed.*

MENTEL, P.J., EDELSTEIN, J., and LELAND, J., concur.

_____