[Cite as *In re D.M.C.*, 2013-Ohio-867.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 12 JE 24 |
| | ) | |
| D.M.C. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:  Civil Appeal from the Court of Common
Pleas, Juvenile Division, of Jefferson
County, Ohio
Case No. 2010 DN 5

JUDGMENT:  Affirmed.

APPEARANCES:
For Appellant-Father:  Atty. Shawn M. Blake
4110 Sunset Blvd.
Steubenville, Ohio 43952

For Appellee-JCDJFS:  Atty. M. Catherine Savage-Dylewski
Jefferson County Justice Center
16001 State Route 7
Steubenville, Ohio 43952

For Appellee-Mother:  Atty. Eric Reszke
Sinclair Building, Suite 810
Steubenville, Ohio 43952

Guardian Ad Litem:  Atty. Craig Allen
500 Market Street, Suite 10
Steubenville, Ohio 43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  March 6, 2013

WAITE, J.

{¶1} This appeal was filed from the trial court's decision to terminate the custodial rights of both the natural mother and father of two children. After an extended placement in a foster home and due to the apparent inability of the natural mother to provide consistent care for the children during the incarceration of the natural father, and in the absence of any suitable placement with a relative or other arrangement by the natural father, Appellee, the Jefferson County Department of Job and Family Services, was awarded permanent custody of the children. Appellant, the natural father who is currently incarcerated, opposes the termination of his parental rights. The natural mother is not party to this appeal and does not contest the trial court's decision to terminate her parental rights. Because the trial court properly applied the applicable law and complied with statutory requirements, and the information in the record supports the decision entered by the court, the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant/father and natural mother have three children in common. The pair, who never married, cohabited for the majority of the period relevant to this appeal. The custody of two of the couple's three children was at issue before the trial court. This appeal involves only D.M.C. Appellant has filed a separate appeal as to the other child.

{¶3} Appellee, Jefferson County Department of Job and Family Services, Child Services Division ("JCDJFS"), sought and received an order from the trial court terminating Appellant's parental rights and permanently transferring custody of

D.M.C. and one of his two siblings. D.M.C. was born on October 17, 2008. The children were first removed from the home in October of 2008 when D.M.C. was born with methadone in his system. After the drug was detected in the newborn, the mother admitted she used Appellant's prescription methadone during the last month of her pregnancy. D.M.C. remained hospitalized in the Neonatal Unit of Pittsburgh Children's Hospital for an extended period of time during which the child was treated for methadone addiction. (Tr., p. 12.) According to the trial court's September 13, 2012 entry permanently transferring custody to Appellee, D.M.C. was adjudicated as an abused child in October of 2008. (9/13/12 J.E.) D.M.C.'s sibling, also removed from the home at the same time as D.M.C., was found by the court to be a dependent child at that same time. (9/13/12 J.E.)

**{¶4}** Both children were returned to their parents on February 27, 2009, but Appellee retained protective supervisory authority. According to Appellee, throughout this supervisory period the natural parents were not compliant with the portion of their case plan that required them to participate in "Help Me Grow," a program that provides family services. They did, however, initially comply with drug and alcohol screening. In March of 2009, a month after the children were returned to their natural parents, the natural mother was charged with and convicted on two counts of child endangerment for leaving the children unattended in a parked car. Despite some noncompliance with the care plan and the convictions for child endangering, protective supervision ended and the case was closed on November 4, 2009.

{¶5} Appellee's next involvement with the children began nearly three months later with a January 29, 2010 report that Appellant was discovered to be unconscious on the floor of the house while the two unattended children were eating food from the floor in the kitchen. A neighbor entered the house and remained with the two children until their mother returned from the grocery store. When Appellee contacted the parents they both denied these allegations. During a subsequent unannounced follow-up visit, both parents agreed to complete a drug screening to determine whether further involvement with Appellee was necessary. The pair did not complete this screening and did not contact or respond to Appellee's attempts to follow up after the alleged incident and unannounced visit.

{¶6} On February 15, 2010, approximately one month later, Appellee received a late night call that the children were walking down the road with their mother, who had apparently left the house due to a domestic dispute. The mother reportedly appeared to be intoxicated in some fashion and the two children were inadequately clothed for the weather, dirty, and unkempt. According to the information provided to the police who responded to the call, a domestic dispute arose between the mother and Appellant over the prescription drug, Xanax. Appellee intervened and the natural mother was transported to the hospital for a mental health evaluation. Despite statements placing Appellant in the family home and his involvement in the dispute that led the children and their mother to leave the house, Appellant testified at the custody hearing that he was not living in the home at that time and claimed that he was absent on the night in question. The children were again removed from the home and placed in foster care. The children were found by

the court to be neglected as defined by R.C. 2151.03, and Appellee was granted temporary custody by the court. The two children have remained in foster care and in the same foster home since their removal. According to Appellee, the children have bonded with their foster parents and the other foster children in the home.

{¶7} On April 9, 2010, after the second removal, both parents signed a case plan. It is undisputed that the natural mother never complied with the terms of her case plan which required her to have "an assessment," follow up with any recommended treatment, and to visit the children on a regular schedule. (Appellee's Brf., p. 4.) Appellee describes the natural mother as noncompliant for failure to "consistently follow through" with counseling and visitation. (Appellee's Brf., p. 4.) During the custody hearing, Appellee listed for the court the mother's cancellations and no-show incidents between May, 2010 and March of 2012. Appellee also placed into evidence the mother's various drug, assault, and theft charges during the same period.

{¶8} Appellant was also required by the case plan to have a drug and alcohol assessment and to visit the children. Appellant was arrested on felony drug charges four days after signing the case plan. Appellant was convicted of a felony drug offense and sentenced to three years of incarceration. Appellant has been incarcerated since April 13, 2010, and is not scheduled for release until April 13, 2013. Prior to incarceration, Appellant was admittedly addicted to methadone and oxycodone, allegedly as a result of a 2007 injury. According to Appellee, Appellant has not undergone the agreed drug and alcohol assessment. He still suffers from back pain as a result of the injury which he treats with over-the-counter medication

because he does not have access to his prescription medications while in prison. Appellant provided Appellee with the names of two relatives who might be able to take care of the children until his release from prison. However, he was only able to provide contact information for one of the two. Appellee contacted this relative, who indicated that she was willing to take the children. When Appellee visited her to determine whether suitable accommodations were available for the children, she did not have plans to move from the one-bedroom apartment she shared with her significant other. Because she was unable to provide any accommodation for the children, her housing was deemed unsuitable and Appellee did not approve the placement.

{¶9} The caseworker assigned to the children expressed her opinion that both were too young to self-protect and were at an age when the constant attention and care of an adult was needed. According to the caseworker, due to the long substance abuse history of both parents, their inattention to the terms of the care plans, nonattendance at visitation, and the absence of any attempt to contact the children by other means, neither parent appeared able to provide the care and attention needed. In addition to other factors, both the caseworker and the foster family expressed concern that the children, especially D.M.C.'s sibling, were "acting out" towards each other and Appellee's employees during and after visitation. The caseworker was also concerned about D.M.C.'s habit of self-harming when upset. (Tr., pp. 30-31, 35-36.) The foster family had taken steps to address the behaviors and the other child was receiving behavioral health treatment. (Tr., pp. 35-37.) The record reflects that prior to the custody hearing, the behaviors of both children had

improved. (Tr., p. 35.) According to the caseworker, the children could not continue to receive the care and services they need without a permanent transfer of custody. The caseworker reported having no concerns with the foster family, emphasized the loving environment, and indicated that the family was considering adoption. (Tr., p. 37.) The caseworker testified that permanent transfer of custody was necessary to allow Appellee to implement a specific plan to seek adoptive parents for the children.

{¶10} According to Appellant, Appellee initially opened a case file due to suspected drug use in 2008. Appellant maintains that he was referred to "Jefferson Behavioral Health" where "it was determined that he did not need addiction therapy at that time." (Appellant's Brf., p. 3.) Appellant alleges that after the children were returned in February of 2009, he complied with the case plan. He claimed that the endangerment charges and other incidents that were reported in 2010 had to do with the natural mother, with whom he was no longer cohabiting due to "relationship issues." (Appellant's Brf., p. 3.) According to Appellant, prior to losing his job in 2009, he had held a steady job for about three years and was providing for his family. Appellant admits that he signed the case plan on April 9, 2010, was arrested four days later on April 13, and that he was subsequently convicted for illegal assembly or possession of chemicals for the manufacture of methamphetamines in the vicinity of a juvenile. Appellant maintains that his dependence on pain medication was the result of an old back injury and that he has remained sober during his incarceration, has lost weight in order to combat the pain, and has completed several educational programs in prison including parenting classes and substance abuse sessions. (Tr., pp. 90-94.) Beyond his testimony Appellant provided no evidence demonstrating his

sobriety or actual attendance at educational programs or of the other progress he described. According to Appellant, he did not realize visitation was an option while he was in prison and this is why he has not visited with his children. (Tr., p. 89.)

**{¶11}** According to Appellee, Appellant has made no attempt to even contact his children during his incarceration. D.M.C. was one year of age when last contacted by Appellant and is now four. Appellee stated that both children were doing well in foster care, having bonded with the foster parents whom they refer to as mom and dad, and that their behavioral issues have improved in the foster home. (Tr., p. 35.) The foster parents are interested in adopting the children. No other relative is seeking custody of the children. Appellee has no concerns about the ability of the foster family to adopt the children. (Tr. pp. 36-40.) Appellee believes that a permanent placement with the foster mother who is the primary caregiver, is in the best interest of both children.

<u>Argument and Law</u>

<u>Assignment of Error</u>

THE MAGISTRATE'S DECISION AND THE JUVENILE COURT'S AFFIRMATION OF SAID DECISION, WHICH TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT, WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶12}** Appellant contends that the court failed to take into account limitations on his ability to comply with the case plan caused by his felony conviction and

resulting incarceration when deciding to terminate his parental rights. He believes that Appellee, without any communication from Appellant in any form, should have undertaken to arrange visitation at his place of incarceration and taken additional steps to identify, locate, and evaluate his other relatives in an effort to find a stable placement for the children. Appellant disagrees with the court's conclusion that Appellee had made reasonable efforts to reunite the children with their natural mother and to avoid placement of the children outside the home of their natural parents. Appellant also contests the court's conclusion that the children had been successfully integrated into the home of foster parents who are interested in adopting the children, because testimony during the transfer hearing indicated that the foster father had been absent from the home for approximately one month prior to the hearing and was no longer in communication with Appellee. Appellant does not challenge the process used by the court, the sufficiency of the transfer hearing, or the form of the court's decision to transfer custody. Instead, Appellant argues that the court, when applying R.C. 2151.414(E) and 2151.414(D)(1), should have come to a different conclusion.

{¶13} Natural parents have a "fundamental liberty interest * * * in the care, custody, and management" of their children that is protected by the Fourteenth Amendment of the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982).

{¶14} "[A] court exercising Juvenile Court jurisdiction is invested with a very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." *In re Anteau*, 67 Ohio App. 117, 119, 36 N.E.2d 47, 48

(1941). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184 (1990), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 172-173, 404 N.E.2d 144, 148-149 (1980). A juvenile court's decision to terminate parental rights and transfer permanent custody of a minor child must be supported by clear and convincing evidence. *Santosky*, *supra*, paragraph three of the syllabus. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is [an] intermediate [standard], being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." (Emphasis sic). *Cross v. Ledford*, 191 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶15} When reviewing the decision of a juvenile court to determine whether it is supported by clear and convincing evidence, "a reviewing court may not as a matter of law substitute its judgment as to what facts are shown by the evidence for that of the trial court" because the "trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony th[a]n a reviewing court." *Id*. at 478. "Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Id.* "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest

weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶16} When a motion for permanent custody is filed by a children services agency, the trial court's decision whether to grant permanent custody of a child to the agency is governed by R.C. 2151.414(B)(1), which provides:

[T]he court may grant permanent custody of a child to [the agency] if the court determines at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed motion for permanent custody and that any of the following apply:

(a) * * * the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more moths of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public services agencies * * * for twelve or more months of a consecutive twenty-two-month period and *

* * the child was previously in the temporary custody of an equivalent agency in another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code [to be an abused, neglected, or dependent child] or the date that is sixty days after the removal of the child from home.

When determining the best interest of a child at a hearing pursuant to a motion for permanent custody pursuant to R.C. 2151.414(D)(1), "the court shall consider all relevant factors, including, but not limited to, the following:"

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code [to be an abused, neglected, or dependent child] or the date that is sixty days after the removal of the child from home.

While the trial court is permitted to find that it is in the best interest of the child that custody be permanently transferred to a public agency after having considered the factors identified in R.C. 2151.414(D)(1), under R.C. 2151.414(D)(2) a court "shall commit the child to the permanent custody of a public children services agency" "if all of the following apply:"

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

When determining whether a child can be placed with either parent within a reasonable period of time, or whether a child should be placed with either parent pursuant to R.C. 2151.414(E), a court "shall consider all relevant evidence" and determine "by clear and convincing evidence" that "one or more of the following exist as to each of the child's parents:"

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric,

psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2)    Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing [on the motion for permanent custody] * * *

(3)  The parent committed any abuse * * * against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4)   The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5)   The parent is incarcerated for an offense committed against the child or a sibling of the child;

* * *

(9)   The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan * * * requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10)  The parent has abandoned the child.

* * *

(12)  The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13)  The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child

from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

As reflected in R.C. 2151.414(B)(1), when a trial court rules on a motion for permanent transfer of custody, it must first determine whether a transfer of custody is in the child's best interest and then determine whether any of the factors listed in (B)(1) also apply. In this instance, due to the duration of the child's removal from the household, the standard to be applied is that found in R.C. 2151.414(D)(2), which requires a best interests finding and permanent transfer of custody if four factors are met. There is no dispute in this instance that the children have been in the custody of Appellee for more than two years, that D.M.C., now four, cannot be placed in an independent planned permanent living arrangement, and that no further extension of the temporary custody order is available. Hence, sections (b)(c) and (d) of R.C. 2151.414(D)(2) are satisfied.

{¶17} Moving on, if the court determines by clear and convincing evidence that one or more R.C. 2151.414(E) factors exist and that the child cannot be placed with his or her parents within a reasonable time or should not be placed with his or

her parents, then custody "shall" be permanently transferred to Appellee. The trial court in this instance made twenty-two specific findings in its decision to transfer custody. Among these findings are: that D.M.C. had been previously removed from the home, the child had been adjudicated abused, the child's sibling had been adjudicated to be dependent, Appellant failed to comply with the case plan without justification, Appellant was currently incarcerated and this would continue until April of 2013, and that Appellant had "demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for the children." (9/13/12 J.E.) In addition to the findings specifically noted in the judgment entry, D.M.C. was adjudicated to be neglected at the inception of the current proceeding. The record also discloses the fact that while Appellant has been employed "on and off," he has no specific employment arrangement in place for his planned release from prison. By his own admission, prior to his arrest Appellant was apparently staying with a friend and maintained no house or apartment of his own. Appellant has no plan or living arrangement for himself or the children after his release from prison. Although he had suggested that there may exist relatives who might care for the children until his release, the only individual who came forward was his adult daughter, whose one bedroom apartment could not properly accommodate the children. Appellant was apparently unable or unwilling to provide contact information for any other individual willing to take responsibility for the children prior to his release or to identify any specific date on which he would be able to provide care and accommodation for the children himself.

**{¶18}** Under these circumstances the findings reflected by the court and the record below support the conclusion, at a minimum, that "the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so" and that the child could not be placed with his parent within a reasonable time. Appellant does not dispute that he has failed to contact or even attempt to contact his children in any way during the entire duration of his incarceration; this failure extends to letters and telephone calls, in addition to visitation. Appellant argues that Appellee should be charged with the responsibility of initiating and arranging visitation and should be required to locate his other relatives, but offers no legal basis for this assertion and no explanation of the absence of written or telephone contact. Nothing in this record suggests that the trial court abused its discretion when determining Appellant showed a lack of commitment toward D.M.C., or that transfer of custody was in the best interest of the child in this instance.

**{¶19}** In addition to meeting the requirements of R.C. 2151.414(D)(2), the trial court also explicitly considered the additional factors listed R.C. 2151.414(D)(1) concerning the needs of the children. The court noted that the children were in need of a legally secure permanent placement and had been in foster care for more than two years. The court found that the children had been successfully integrated into the foster home, that the foster parents were interested in adopting the children, and that the guardian ad litem recommended permanent transfer of custody to Appellee. While it is certainly true that the circumstances of Appellant's incarceration impaired his ability to comply with the case plan as written, it is not the fact of Appellant's

incarceration, but his failure to take steps to mitigate, compensate for, or work with Appellee to create a modification that demonstrates his lack of commitment and readiness to take responsibility for his children that underlies the decision. Appellant claims he took some classes in prison on parenting and anger management, but does not provide evidence of completion, and apparently did not attempt to see if the classes could be recognized or approved by Appellee. Similarly, Appellant refers to a single clean drug test, but again provides no evidence and apparently never provided or attempted to provide the test results to Appellee.

{¶20} Other districts have found that incarcerated parents who made more extensive attempts to comply with their case plans, have nevertheless failed to establish their ability to care for their children to overcome a decision that permanent transfer of custody is in the child's best interests. These include *In re Vance,* 3d Dist. Nos. 05-03-16, 05-03-17, 05-03-18, 2003-Ohio-6991 (where the natural mother, frequently incarcerated, provided attendance records for classes she took in prison, but failed to provided information to establish that the classes were "similar or identical to those considered acceptable by the case plan" ¶20); *In re S.S.,* 10th Dist. No. 05AP-204, 2005-Ohio-4282 (where the court found that Appellant had made efforts at stabilizing her life, including evidence that she completed parenting classes and had participated in drug screening, but the court could not "ignore appellant's extended absences during D.S[.]'s early years of life and the effects of these absences" despite these efforts. ¶35); and *In re Strader,* 5th Dist. No. 2008 CA 00255, 2009-Ohio-1292 (where appellant, although incarcerated, established paternity and sent his child mail on his birthday and Christmas, contacted the child's

caseworker for updates on the child's welfare, and completed Responsible Family Life Skills and Dad 101 classes while in prison, but was unemployed when incarcerated, had no promise of employment upon release, and planned to live in a shelter on release until he could find employment but was not certain if the shelter would allow children.  The court found that permanent transfer of custody was in the child's best interest, due in part to the father's 18 month absence from the child's life and the absence of employment and stable housing.)  Appellant in this instance has not taken even nominal steps in order to demonstrate his commitment to, and ability to take care of, D.M.C.  Prior to his incarceration he transferred responsibility to the natural mother, who at the hearing he described as solely responsible for any neglect and mistreatment the children suffered.  At the time he was incarcerated he was unemployed and lacked stable housing.  At the time of hearing he was incarcerated and has no plan for either employment or housing.  He has been continually absent from D.M.C.'s life virtually from birth and made no attempt to contact the child in three years.  The findings made by the court and the information contained in the record below do not lead us to conclude that the trial court abused its discretion or that the judgment was against the manifest weight of the evidence.  The trial court was in the best place to evaluate the information before it, and Appellant has identified no defect in the proceedings or the record that undermines the determination made by the trial court. *In re Anteau, supra*, at 48.  Appellant's sole assignment of error is overruled.

Conclusion

{¶21} The trial court complied with the procedure prescribed by R.C. 2151.414 and applied the appropriate burden of proof.  Appellant has not identified a

defect or error, and argues only that the trial court should have reached a different conclusion. The record below does not reflect an abuse of discretion occurred. The judgment entered by the trial court is supported by the evidence that appears in the record. The judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.